**DECLARATION**

1  ANTHONY J. ONCIDI, SBN 118135
   aoncidi@proskauer.com
2  HAROLD M. BRODY, SBN 84927
   hbrody@proskauer.com
3  G. SAMUEL CLEAVER, SBN 245717
   gcleaver@proskauer.com
4  PROSKAUER ROSE LLP
   2049 Century Park East, 32nd Floor
5  Los Angeles, CA 90067-3206
   Telephone:   (310) 557-2900
6  Facsimile:   (310) 557-2193

7  KENDRICK L. MOXON, SBN 128240
   kmoxon@earthlink.net
8  MOXON & KOBRIN
   3055 Wilshire Blvd., Ste 900
9  Los Angeles, CA 90010
   Telephone:  (213) 487-4468
10  Facsimile:  (213) 487-5385

11  Attorneys for Defendant,
    Church of Scientology International

12

13

14                  UNITED STATES DISTRICT COURT

15                 CENTRAL DISTRICT OF CALIFORNIA

16  LAURA ANN DeCRESCENZO, aka      )  Case No.
    LAURA A. DIECKMAN               )
17                                  )
           Plaintiff,               )  **DECLARATION OF HAROLD M.**
18                                  )  **BRODY IN SUPPORT OF**
       v.                           )  **REMOVAL OF CIVIL ACTION**
19                                  )  **FROM THE SUPERIOR COURT**
    CHURCH OF SCIENTOLOGY           )  **OF THE STATE OF**
20  INTERNATIONAL, a corporate entity, ) **CALIFORNIA FOR THE**
    and DOES 1-20,                  )  **COUNTY OF LOS ANGELES TO**
21                                  )  **THE UNITED STATES**
           Defendants.              )  **DISTRICT COURT**
22                                  )
                                    )
23                                  )  (Los Angeles County Superior Court,
                                    )  Case No. BC 411018)
24  _____)

25      Harold M. Brody declares as follows:

26      1.   **Identification**:  I am a partner in the law firm Proskauer Rose LLP,

27  counsel for defendant Church of Scientology International ("CSI").  I am admitted

28

1   to practice before this Court.  Except as expressly noted, I have first-hand

2   knowledge of the facts set forth below.

3       2.      **Original Complaint Filed**:  On April 12, 2009, an action was

4   commenced in the Superior Court of the State of California in the County of Los

5   Angeles, entitled "Laura Ann DeCrescenzo, aka Laura A. Dieckman, Plaintiff, v.

6   Church of Scientology International, a corporate entity, and Does 1-20,

7   Defendants," as case number BC 411018.  A true and correct copy of the summons

8   and complaint are attached hereto as Exhibit A.  I am informed and believe that

9   Defendant CSI was served by substituted service effective May 2, 2009.  A true and

10  correct copy of Proof of Service of Summons is attached hereto as Exhibit B.

11      3.      **Related Case Order**:  On the same date, Plaintiff's counsel filed a

12  Notice of Related Case asking, under LASC Local Rule 7.3(f), that this case be

13  found to be related to *Claire Headley v. Church of Scientology*, LASC Case No. BC

14  405834.  On April 30, 2009, the judge assigned to the Claire Headley matter, the

15  Hon. Jane L. Johnson, ruled that the two cases were not related, so this case was not

16  re-assigned and remained with the Hon. Ronald Sohigian for all purposes.  A true

17  and correct copy of the Notice of Related Case is attached as Exhibit C; a true and

18  correct copy of the Court's order finding the two cases not related is attached as

19  Exhibit D.

20      4.      **Plaintiff Files A First Amended Complaint**:  On or about May 19,

21  2009, before defendant had answered or otherwise responded, Plaintiff filed a First

22  Amended Complaint ("FAC").  Plaintiff's counsel first provided a copy of the FAC

23  to me on May 12, 2009.  A true and correct copy of the FAC provided to me is

24  attached as Exhibit E.

25      5.      **The FAC Is the First Pleading to Raise A Federal Question**:  The

26  original complaint was not removable as it did not plead a federal question.  The

27  FAC, however, does plead a federal question.  The FAC purports to plead three

28  causes of action: (1) Unfair Practices Under B&P § 17200 et seq.; (2) Labor Code

1   Violations; and (3) Forced Labor aka Human Trafficking.  In the third cause of

2   action for "Forced Labor," Plaintiff pleads that

3           [p]ursuant to 18 USC [sic] §§ 1593 and 1595, Plaintiff has

4           a private cause of action under the Federal Human

5           Trafficking laws, including 18 USC [sic] § 1589 'Forced

6           Labor', on which Plaintiff may recover the full amount of

7           his loss, including payment at minimum wage and for

8           overtime and reasonable attorneys [sic] fees.

9   (FAC ¶ 73.)  Plaintiff also pleads that

10          [t]he private cause of action for forced labor under 18

11          USC [sic] §§ 1589, 1593 and 1595 does not have a statute

12          of limitation [sic] provision in the Federal Human

13          Trafficking law.  In that circumstance, state procedural law

14          applies and sets the appropriate statute of limitation [sic]

15          rule.

16  (*Id.* ¶ 74.)  18 U.S.C. § 1595, specifically invoked by Plaintiff, provides that the

17  "victim" of an alleged human trafficking offense, "may bring a civil action against

18  the perpetrator *in an appropriate district court of the United States* . . . ."  (Emphasis

19  added.)  In his prayer for relief, Plaintiff prays for "[d]amages authorized by . . .

20  federal or common law, for forced labor/human trafficking as alleged in the Third

21  Cause of Action . . . ."  (Prayer ¶ 4, FAC at 50:16-18.)

22       6.   **Notice of Removal**:  Notice of this removal is being given both to the

23  adverse party and to the state court pursuant to 28 U.S.C. § 1446(d).  A true and

24  correct copy of the Notice to Adverse Party is attached as Exhibit F.  A true and

25  correct copy of the Notice to State Court is attached hereto as Exhibit G.

26       I declare under penalty of perjury under the laws of the United States of

27  America that the foregoing is true and correct to the best of my knowledge,

28

1   information and belief and that this declaration was executed on June ___3___, 2009, at

2   Los Angeles, California.

3

4                                         _____

5                                         HAROLD M. BRODY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    4
DECLARATION OF HAROLD M. BRODY IN SUPPORT OF NOTICE OF REMOVAL

**EXHIBIT A**



**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED**
Los Angeles Superior Court

APR 02 2009

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
DOROTHY SWAIN

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CHURCH OF SCIENTOLOGY INTERNATIONAL, a corporate
entity, AND DOES 1 - 20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LAURA ANN DeCRESCENZO, aka LAURA A. DIECKMAN

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Stanley Mosk Courthouse<br>111 North Hill Street<br>Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br>BC411018 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Barry Van Sickle, (916) 549-8784
1079 Sunrise Avenue, Suite B-315, Roseville, CA 95661

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* | APR 02 2009 | John A. Clarke Clerk, by<br>*(Secretario)* | D. Swain Deputy<br>*(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

www.accesslaw.com

9

BARRY VAN SICKLE - BAR NO. 98645
1079 Sunrise Avenue
Suite B-315
Roseville, CA  95661
Telephone: (916) 549-8784
E-Mail:  bvansickle@surewest.net

Attorney for Plaintiff
LAURA ANN DeCRESCENZO

FILED
Los Angeles Superior Court

APR 02 2009

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
DOROTHY SWAIN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

BC411018

| | |
|---|---|
| LAURA ANN DeCRESCENZO, aka LAURA A. DIECKMAN, <br><br> Plaintiff, <br><br> vs. <br><br> CHURCH OF SCIENTOLOGY INTERNATIONAL, a corporate entity, AND DOES 1 - 20 <br><br> Defendants | PLAINTIFF'S COMPLAINT FOR: <br><br> 1) RECISSION OF UNLAWFUL, FRAUDULENT INSTRUMENTS <br> 2) UNPAID WAGES RECOVERABLE UNDER B&P §17200 ET. SEQ <br> 3) DISCRIMINATION & INVASION OF PRIVACY <br> 4) HUMAN TRAFFICKING (CIVIL CODE 52.5, PENAL CODE 236.1) <br> 5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS <br> 6) OBSTRUCTION OF JUSTICE |

## OVERVIEW

1)    There are two very different versions of Scientology. There is the Scientology as presented to the outside world and there is a different Scientology in which Plaintiff lived and worked for approximately thirteen years.  In the Scientology world Plaintiff experienced, twelve year old children are taken from their homes, asked to sign employment contracts and put to work.  Pregnant women are coerced to have abortions.  Employees work 100 hour weeks in the business ventures of Scientology at

1

PLAINTIFF'S COMPLAINT

1  far less than minimum wage.  There are no contributions to Social
2  Security or employee pensions, although there is plenty of money
3  to pay Scientology's Chairman of the Board, private investigators
4  and lawyers.  Personal freedoms are restricted and severe
5  punishments are used to keep employees in line.  Passports are
6  taken from foreign workers and the infirm are discarded if they
7  cannot perform.  For reasons obvious to those who know the real
8  Scientology, it fears the truth and works hard to suppress and
9  deny it at almost any cost.  That is the context of this
10 litigation.
11     2)  The gist of the case is to recover past due wages,
12 interest, other economic damages and attorney's fees for
13 Defendant Church of Scientology International's (CSI) many years
14 of continuing labor and human trafficking violations.  (See,
15 Watson v. Department of Rehabilitation (1989) 212 Cal.App.3d
16 1271, 1290 re the "continuing violations" doctrine.)  In related
17 causes of action, Plaintiff also complains that she was coerced
18 to have an abortion, was the victim of intentional infliction of
19 emotional distress and that Defendant is attempting to silence
20 other employees who are potential witnesses and co-plaintiffs in
21 this case.  Illustrative of Plaintiff's experiences while working
22 for Defendant is the fact that she displayed suicidal tendencies
23 and swallowed bleach to expedite her quest for freedom.
24     3)  Plaintiff's First Cause of Action seeks to rescind,
25 cancel, void, negate and confirm unenforceability of the
26 purported waivers, confidentiality agreements and penalty clauses
27 she was forced to sign by Defendant and/or its agents.  As shown
28 below, most, if not all, of the rights in question cannot be

2
PLAINTIFF'S COMPLAINT

1  waived.  After addressing various purported waivers and related

2  documents which are unlawful and unenforceable on numerous

3  grounds, including coercion and duress, Plaintiff seeks to

4  recover compensation, with interest, due her for her years of

5  work for Defendant CSI at below minimum wage and for forced and

6  coerced labor under the Human Trafficking laws.  Labor Code

7  §218.6 expressly provides for interest on unpaid wages from the

8  date payment was due.

9       4)   The rights to minimum wage and overtime pay are not

10  waivable (Labor Code §1194).  It is unlawful for an employer to

11  seek a waiver of wage claims (Labor code §206.5).  Unlawful

12  contracts are invalid (C.C. 1667, 1668 & 1689); violations of law

13  cannot be excused by exculpatory clauses (C.C. 1668); and

14  contracts tainted by fraud, duress, coercion, mistake or

15  unconscionable terms are invalid and subject to rescission.  See,

16  e.g. Civil Code §§1565 et. seq. and Civil Code 1688 et. seq.)

17  The statute of limitations applicable to these cases is four

18  years from discovery of grounds for rescission and B&P §17000;

19  and five years for human trafficking.  Plaintiff has timely filed

20  this action.  (See e.g. CCP 337 & 338.)

21       5)  Plaintiff started working for a Scientology

22  organization in her hometown at the age of nine.  She obtained a

23  work permit and became effectively a full-time employee of

24  Scientology from age ten.  At age 12, Plaintiff signed her first

25  "Contract of Employment".  She left school, home and family to

26  work for the Church of Scientology International ("CSI").  This

27  required that plaintiff move to another state.  She was married

28  to a co-worker at age sixteen, became pregnant while still a

3

PLAINTIFF'S COMPLAINT

12

1  minor and was coerced by CSI to have an abortion at age

2  seventeen.  Plaintiff escaped in 2004 at age twenty-five.  For

3  over 13 years, Plaintiff worked under illegal conditions and for

4  illegal pay.  There are hundreds, probably thousands, of past and

5  present employees of CSI who experienced similar violations of

6  rights, however, most are ignorant of their rights, under the

7  misapprehension they had no rights or surrendered them in various

8  documents they were required to sign, or are afraid to come

9  forward and challenge the dark side of Scientology.

10      6)   Plaintiff is uncertain with respect to the identity of

11  all persons or entities responsible and liable for this wrongful

12  conduct and names said potential parties as Doe Defendants 1 - 10

13  as authorized by California law.  Doe Defendants 11 - 20 are

14  those potential Defendants who may participate in wrongful

15  retaliation, witness intimidation and fraudulent transfer or

16  concealment of assets to avoid payment of judgment in this case.

17              DISCUSSION OF PERTINENT LAW

18      7)   Plaintiff's case is supported by statutory law and

19  decisions of the U.S. Supreme Court, the California Supreme

20  Court, the California Court of Appeals and the Ninth Circuit

21  Court of Appeals.  Defendant CSI, which is part of the

22  Scientology enterprise ("Scientology"), typically claims First

23  Amendment or waiver type defenses to violations of state and

24  federal law; however, under controlling authorities Defendant is

25  subject to labor laws and other neutral laws of general

26  applicability.  Further, the legal and fundamental rights in

27  question cannot be waived.  Defendant's efforts to escape

28  responsibility for illegal acts by coercing exculpatory contracts

4

PLAINTIFF'S COMPLAINT

/3

1   and forcing waivers and admissions under duress are ineffective

2   as a matter of law.  See e.g. Civil Code §1668.  (Additional

3   authorities are referenced and cited below.)

4       8)   The U.S. Supreme Court has ruled that non-profit and

5   religious entities must abide by labor laws including laws on

6   wages and employment of minors.  In the Alamo case (cited below),

7   the court also found that persons performing work for a religious

8   entity are covered by the labor laws even if they claim not to

9   want or qualify for the protection of the labor laws.  Workers of

10  religious entities are protected by the labor laws irrespective

11  of whether workers consider themselves to be employees.  The

12  protection of labor laws cannot be waived.  For purposes of

13  minimum wage and child labor laws, employment is evaluated in the

14  context of economic reality.  Tony & Susan Alamo Foundation v.

15  Sec. of Labor, (1985) 471 US 290.  In accord, Mitchell v. Pilgrim

16  Holiness Church Corp. 210 F.2d 879 (7th Cir. 1954).  See also,

17  Prince v. Massachusetts, (1944) 321 U.S. 158 (Child Labor).

18      9)   The California Supreme Court and the Ninth Circuit

19  Court of Appeals have also found in well-considered opinions that

20  religions are not exempt from laws of general applicability such

21  as the labor laws.  There is no constitutional right to exemption

22  from minimum wage and child labor laws.  See e.g. Elvig v. Calvin

23  Presbyterian Church, 397 F.3d 790, 792 (9th Cir. 2003) (citing 3

24  U.S. Supreme Court cases) and North Coast Women's Care Medical

25  Group, Inc. v. Superior Court, (2008) 44 Cal.4th 1145.

26      10)  For purposes of the minimum wage and similar laws, the

27  test of employment looks to "economic reality" not labels, titles

28  or a self-serving paper trail contrived by lawyers trying to

5

1  minimize or obscure Defendant's legal obligations and

2  liabilities.  An "employee" who is called an independent

3  contractor, a volunteer or religious worker is still an employee.

4  As the court observed when evaluating employment in Estrada v.

5  FedEx Ground Package System, Inc. (2007) 154 Cal.App.4th 1, 10:

6  "…[I]f it looks like a duck, walks like a duck, swims like a duck

7  and quacks like a duck, it is a duck."  Simply put, if it looks

8  like employment and has the attributes of employment, it is

9  employment, for purposes of the labor laws.  The protections of

10  the labor laws cannot be lost and the underlying reality is not

11  changed, by Scientology's obsessive quest for self-serving

12  documents.  See e.g. Civil Code §3513, Labor Code 1194, County of

13  Riverside v. Superior Court (Madrigal) (2002) 27 Cal.4th 793 and

14  Abramson v. Juniper Networks, Inc. (2004) 115 Cal.App.4th 638.

15  See also Civil Code §1668.  (Exculpatory contracts are

16  unenforceable.)

17      11)  Under the principles applied by the Alamo court, the

18  parties' perceptions and documents do not control applications of

19  the labor laws.  Allowing employees or employers to disavow labor

20  law protections would effectively make minimum wage and other

21  labor laws optional, not mandatory, which is not the law.

22  Numerous cases have recognized the strong public policy, and

23  compelling government interest, behind minimum wage, overtime and

24  mandatory off-time laws.  The labor laws protect the weaker

25  employee from being exploited by the stronger employer and

26  against the "evils of overwork".  See e.g. Gentry v. Superior

27  Court (Circuit City Stores, Inc.) (2007) 42 Cal.4th 443 at 445-6.

28  The pertinent public policy is particularly applicable where the

6

1  worker is dependant upon the job for a living.  Plaintiff in this

2  case was dependant upon her work and labor for Defendant, which

3  satisfies the "economic reality test".  As explained in Real v.

4  Driscoll Strawberry Associates, Inc. 603 F.2d 748, 754 (9th Cir

5  1979): "Courts have adopted an expansive interpretation of the

6  definitions of "employer" and "employee" under the FLSA, in order

7  to effectuate the broad remedial purposes of the Act…The common

8  law concepts of "employee" and "independent contractor" are not

9  conclusive determinants of the FLSA's coverage.  Rather, in the

10 application of social legislation employees are those who as a

11 matter of economic reality are dependent upon the business to

12 which they render service." (Emphasis in original)

13      12)   Plaintiff Laura D. worked for the Scientology

14 enterprise, namely Defendant CSI, at below minimum wage

15 compensation from 1991 to 2004.  Generally, Plaintiff was an

16 office worker when not in the RPF for punishment and control

17 reasons.  For the most part, Plaintiff's work for CSI was

18 clerical and secular in nature.  While technically irrelevant to

19 the test of employment for the protection of the labor laws (See

20 e.g. Alamo), Plaintiff was not a nun, monk, priest, minister or

21 in a similar occupation as Scientology's "PR" machine or lawyers

22 may suggest.  If Scientology has a comprehensive "Bible", or an

23 equivalent, Plaintiff never saw it, studied it or preached about

24 it.  When not being punished in the RPF, Plaintiff was usually

25 performing mundane office work under abnormal, bizarre and

26 illegal conditions.

27      13)   Defendant CSI, related Scientology entities, and

28 potential Doe Defendants claim that workers such as Plaintiff are

7

PLAINTIFF'S COMPLAINT

16

1  not entitled to the benefits and protections of the labor laws.

2  The weight of authority is contrary to Defendant's self-granted

3  immunity from state and federal labor laws.  As stated by the

4  California Supreme Court, "… [To] permit religious beliefs to

5  excuse acts contrary to law… would be to make professed doctrines

6  of religious belief superior to the law of the land, and in

7  effect to permit every citizen to become a law unto himself."

8  Catholic Charities of Sacramento, Inc. v. Superior Court (2004)

9  32 Cal.4th 527, 541 (Citing the U.S. Supreme Court).

10 Historically, the Scientology enterprise has considered itself

11 just as described by the court – a law unto itself.

12       14)   Scientology's own website, www.Scientologytoday.org,

13 has a somewhat fanciful description of life in the See Org.  It

14 has the following admission that its workers are, of course,

15 "employees".  It states:

16       "…All advanced churches and management-echelon

17       church organizations employ only members of the

18       Sea Organization religious order. While such

19       members sign legally binding employment contracts

20       and are responsible to the directors and officers

21       of the church where they are employed…"

22       (www.scientologytoday.org/corp/ministry2.htm)

23       15)   This case addresses labor code violations, and other

24 improper, illegal and unfair business practices, in a first cause

25 of action brought under Business and Professions Code §17200.

26 The operative statute underlying the first cause of action may be

27 triggered by essentially all business torts and statutory

28 violations, including violations of federal law, which are

8

PLAINTIFF'S COMPLAINT

17

1  independently actionable under the California body of law on

2  unfair competition and business practices.  The California

3  Supreme Court has expressly ruled that labor code violations are

4  actionable under this law.  The difference between what was paid

5  as wages and what should have been paid under minimum wage and

6  overtime laws qualifies as restitution damages under B&P Code

7  §17203. Cortez v. Purolator Air Filtration Products Co. (2000) 23

8  Cal.4th 163, 177-179.

9       16)  This case has been brought within the applicable

10 limitation period for a B&P Code §17200 action, rescission of

11 unlawful contracts, tort claims and other claims herein, (Case

12 timely filed after discovery of claims. See, e.g. Broberg v. The

13 Guardian Life Ins. Co. of America (3/2/09 __Cal App 4th__

14 (B199461)) and the five year period for human trafficking

15 actions.  With respect to setting aside bogus agreements and

16 waivers, it is also timely.  See CCP §337 & 338.  To the extent

17 Defendant may attempt to use statute of limitation arguments to

18 limit damages or attack certain aspects of this case, Defendant

19 should be estopped.  Defendant's deceitful and atrocious conduct

20 should operate to equitably toll any statute of limitations and

21 equitably estopp Defendant from using time bars to escape

22 liability for an ongoing course of illegal and coercive conduct.

23 Defendant's treatment of those who labor for the Scientology

24 enterprise has been and continues to be offensive to law, public

25 policy and inalienable rights guaranteed to Plaintiff and others

26 by Article 1 Section 1 of the California Constitution.

27      17)  Plaintiff does not have copies of any instruments such

28 as purported releases, non-contracts, waivers and similar

9

PLAINTIFF'S COMPLAINT

18

1    documents forced upon her and other employees.  Plaintiff does

2    not recall the details of what she signed.  Although the

3    Scientology enterprise, and Defendant CSI, expends great effort

4    in creating a self-serving "paper" defense, the statutory right

5    to receive overtime pay embodied in Section 1194 is unwaivable as

6    stated by the California Supreme Court in Gentry v. Superior

7    Court (2007)42 Cal. App. 4th 443 at 456.  See also, Labor Code

8    §1194 & 206.5.  The U.S. Supreme Court has held that the

9    protections of the federal labor laws cannot be abridged or

10   waived.  See e.g. Barrentine v. Arkansas-Best Freight System,

11   (1981) 450 U.S. 728, 740.  In addition to statutory restrictions

12   on waivers and agreements contrary to public policy, any

13   purported written waiver of employment rights or wages legally

14   due would not be enforceable on numerous other grounds including

15   duress, menace, illegality and lack of consideration.  Under

16   controlling laws, Defendant had a non-waivable duty to comply

17   with wage and minor labor laws.  Defendant breached said duty.

18   While Plaintiff made no voluntary or effective waiver of

19   pertinent rights, any such waiver, contract or concession would

20   be improper on numerous grounds supported by the Labor Code

21   §1194, the Civil Code and common law.  See e.g. Gentry v.

22   Superior Court (2006)135 Cal. App. 4th 944 and Civil Code §1668

23   (Exculpatory documents ineffective as a matter of law).

24       18)  Pursuant to California Minimum Wage Order NW-2007,

25   Defendant CSI was required to pay Plaintiff minimum wage and

26   overtime compensation without any deduction for the purported

27   value of room and board furnished to Plaintiff.  In computing

28   unpaid wages, therefore, Plaintiff is entitled to recover the

10

PLAINTIFF'S COMPLAINT

1 | full amount of minimum wages, overtime and penalties due without

2 | offset.   In any event, the meager existence provided by CSI would

3 | not satisfy the minimum wage and overtime requirements.

4 | **DISCUSSION**

5 |     19)   The core facts are not subject to serious dispute.

6 | Plaintiff was employed by Defendant CSI.   AS an employee

7 | Plaintiff was, and is, entitled to the full protection of state

8 | and federal labor laws.   As a citizen who worked in the State of

9 | California, Plaintiff is entitled to the protection of state law

10 | and the inalienable rights guaranteed by the California

11 | Constitution.   Defendant CSI violated numerous duties owed to

12 | Plaintiff as an employee, and as a person with basic human

13 | rights, under the common law of tort and contract.   (Even the

14 | mythical "volunteers" described in Scientology propaganda are

15 | entitled to better treatment than Defendant CSI gives to

16 | employees such as Plaintiff.)   These violations of Plaintiff's

17 | rights are described in more detail in the specific causes of

18 | action set forth below.

19 |     20)   Plaintiff was an employee of CSI as a matter of fact,

20 | under the applicable test set forth in cases such as Alamo, and

21 | consistent with numerous Scientology documents, which frequently

22 | acknowledge that it has employees.   For example, when Scientology

23 | lawyers are trying to get subservient foreign labor into this

24 | country, the documents submitted to the immigration agency

25 | frequently refer to the foreign workers as "employees".   The Sea

26 | Org contract, which Plaintiff believes she signed at age twelve

27 | self-describes as a "Contract of Employment".

28 |

11

PLAINTIFF'S COMPLAINT

20

21)  People who have the resolve to terminate their employment with CSI are told that they have broken their contract or "covenants" of employment.  CSI then takes the position that under the employment contract, the employee owes a "Freeloader Debt" for Scientology courses taken while employed.  Employees, such as Plaintiff, are required to take various "how to" or management courses, and submit to "processing" to hold or qualify for their assigned jobs.  The employees then get a bill for the training if they "breach" the purported employment contract. This may reflect Scientology's doctrine of exchange.  According to L. Ron Hubbard, one should not give away anything of value. According to this doctrine of exchange, employees give work, and employers give pay in exchange.  While it is the law of Alamo and similar cases that governs, not Scientology's doctrines, the doctrine of exchange belies Defendant's "volunteer" arguments. The purported "just a volunteer" defensive argument being made to the press and others is pure spin and legally wrong.

22)  Plaintiff worked long hours including 100+ hour weeks at below minimum wage, no compensation for overtime and insufficient time off.  The work week was seven days not six as required by law.  In the course of, and by reason of her employment with Defendant, Plaintiff was coerced into having an abortion at the age of seventeen.  She was still a minor. Plaintiff was coerced into having an abortion to keep her job with Defendant.  Plaintiff is informed and believes that Defendant continue to ignore labor laws and coerce pregnant workers into forced abortions.

1      23)  The economic reality in which Plaintiff found herself
2  when working for Defendant CSI and the Scientology enterprise was
3  that she was dependant upon Defendant for sustenance and income.
4  Plaintiff was not a part-time volunteer who had other work and
5  could come and go as she pleased.  The extreme opposite was the
6  case.  Plaintiff had a rigid work schedule.  Plaintiff's work
7  activities were strictly controlled by Defendant CSI.  Plaintiff
8  was not allowed to have other employment or source of income.
9  When married, Plaintiff and her then husband got in trouble for
10  using his mother's car on occasions.  Plaintiff's "compensation"
11  was affected by production.  In Scientology-speak, the worker's
12  lives revolve around "stats".  If "stats" are up, one has
13  survived another dreary week. If "stats" are down, things get
14  ugly.

15      24)  Plaintiff was required to wear a uniform at work and
16  could have her pay docked if she did not take proper care of her
17  work uniform.  Plaintiff was confined to her place of employment.
18  She needed someone's permission to take time off or attend to
19  personal matters.  For purposes of the labor laws, as a matter of
20  economic and practical reality, and as a matter of what CSI
21  presents to be contracts of employment, Plaintiff was an
22  "employee" of Defendant CSI.

23      25)  An alternative reason for tolling the statue of
24  limitation provisions is Defendant's practice of failing to give
25  employees notice of their rights as is required by law.
26  Defendant failed to give required notices of labor rights and
27  demanded bogus waivers and instruments for the purpose of evading
28  law and avoiding payment of even minimum wage to its workforce.

1   Defendant not only fails to give proper notice, it gives a false

2   notice of no rights.  This includes the "we do not have to pay

3   you, we are a church" notice to employees, which is false,

4   misleading and contrary to law.  Further, the Scientology

5   enterprise including its "Mother Church" CSI, has written

6   policies on how it deals with persons who challenge its conduct

7   and money-making activities.  These written policies, and the

8   aggressive and vengeful conduct these policies condone and

9   inspire, are known to those, such as Plaintiff, who work or have

10  worked for Defendant.  The Scientology enterprise, including

11  Defendant CSI, has purposely cultivated a reputation as the

12  proverbial 800 pound gorilla.  (See e.g. the Wollersheim cases

13  cited below.)The directives of its founder, L. Ron Hubbard, are

14  replete with instructions to use litigation to harass, attack

15  never defend, and disregard the truth for the "higher cause" of

16  Scientology.  L. Ron Hubbard preached deceit, domination and the

17  stupidity of WOG's (non-Scientologists).  According to a Hubbard

18  dictum of universal truth, the way to control people is to lie to

19  them.  Perceived enemies of Scientology are declared "Suppressive

20  Persons" and may be harassed and attacked by the Scientology

21  enterprise.  Many former employees are scared and intimidated

22  into silence and submission.  Most lawyers will not take a case

23  against Scientology regardless of merit.  For these reasons and

24  others, Defendant should be estopped from using a statue of

25  limitation defense to avoid or limit damages.

### LAURA DeCRESCENZO'S SCIENTOLOGY STORY

26      26)  Plaintiff was recruited into employment with the

27  Scientology enterprise at an early age.  The recruiting started

28

1  when Plaintiff was <u>nine years old</u>.  At age twelve, Plaintiff

2  signed a "Contract of Employment" with the Scientology

3  enterprise.  Of course, as a minor she was incompetent to enter

4  into an employment contract.  Plaintiff was not allowed to have a

5  copy of the document she signed.

6      27)  At age twelve, Plaintiff was required by law to attend

7  school (a real school with real hours, a teacher and an

8  appropriate curriculum) and barred from most types of labor or

9  employment.  Compulsory education and child labor laws did not

10  deter Scientology from trying to pressure Plaintiff into dropping

11  out of school, moving across state lines and going to work for

12  CSI at the immature age of twelve.  CSI stole Plaintiff's youth

13  and that of many others.

14      28)  Plaintiff knew before joining the Scientology work

15  force that she wanted to have children and raise a family of her

16  own.  Plaintiff wanted and reasonable expected a somewhat normal

17  life while working for the Scientology enterprise.  During the

18  recruitment phase, Plaintiff was told she could run away and join

19  the circus (figuratively speaking), have children, get an

20  education, visit her parents back in New Mexico and get free

21  Scientology.  To a young girl with the normal maturity of a

22  twelve year old, this was an attractive sales pitch.  But it was

23  not true.  Life as a Scientology employee was much different than

24  what was sold to Plaintiff in the recruitment phase of her

25  misadventure.

26      29)  Once in, it was all work and little else.  Plaintiff

27  discovered she had almost no personal freedom.  Planned visits to

28  family were restricted, delayed and cut short.  She was 12 – 13

1  years old and not allowed unrestricted access to her parents.

2  She could not visit her parents without special permission and

3  being "sec checked". She would be "sec checked" again upon her

4  return. Sec-checking was mandatory and is described in some

5  detail in the cause of action for intentional infliction of

6  emotional distress.

7       30)  While employed by CSI, Plaintiff was on occasion

8  assigned to work in the Rehabilitation Project Force ("RPF").

9  Work on the RPF is designed to control, coerce, punish, inflict

10 emotional distress and break the will of the victim. The working

11 conditions are severely harsh. Personal liberty is non-existent.

12 Plaintiff worked on the RPF for over two years, which caused her

13 significant emotional distress.

14       31)  Plaintiff eventually decided to leave but needed an

15 escape plan. The Scientology enterprise, including Defendant

16 CSI, uses various techniques to keep workers on the job and

17 providing cheap labor. Plaintiff knew of various enforcement

18 procedures and knew she had to find a creative way out.

19 Plaintiff also knew that the Scientology enterprise, including

20 Defendant CSI, was somewhat paranoid about workers dying or

21 committing suicide at one of Scientology's main bases. (A death

22 may cause an inconvenient investigation.) Therefore, to escape,

23 Plaintiff swallowed bleach while being sure this was witnessed.

24 Plaintiff was distraught and desperate to get out. She exhibited

25 suicidal tendencies and was dubbed a security risk. Plaintiff

26 had found a way out; however, she was still forced to leave on

27 the employer's terms.

28

PLAINTIFF'S COMPLAINT

1    32)  After being deemed a suicide risk for swallowing

2  bleach, Plaintiff was brought into a room to sign her "exit"

3  papers.  Plaintiff was under extreme duress and just wanted to

4  get out without having to undergo hours or days of emotional

5  abuse.  There was no negotiation over her escape papers.  She was

6  required to sign various papers before being allowed to leave the

7  room.  Plaintiff signed the papers to get out and was not given

8  copies.  Plaintiff did not fully understand the papers, or the

9  process, except that it had to be endured if she wanted out.

10  Plaintiff had to sign the papers to leave the room and get out.

11  Plaintiff partially recalls some of the content.  The papers

12  contained a list of her "crimes" and confidential matters

13  revealed in the "sec checking" procedure described above.  There

14  were recitations about how great Scientology was and how bad she

15  was, and various terms about not disclosing the working

16  conditions at CSI and not suing Scientology for its wrongs.

17  Plaintiff did not freely consent to the unconscionable and

18  unlawful terms of her termination papers.  These documents were

19  signed by Plaintiff under duress, mistake of fact and law, and

20  under improper conditions and coercion.

21    33)  Plaintiff submits that this exit process is in itself

22  illegal and improper.  It is a coerced procedure and involves

23  elements of fraud, deceit and undue influence.  The resulting

24  papers cannot exculpate Scientology form violations of the labor

25  laws.  (Authorities cited elsewhere.)  The papers purport to

26  waive rights that cannot be so waived, and are believed to

27  include liquidated penalty provisions that are void as against

28  public policy.  This heavy-handed and deceitful "exit" procedure

1  serves to extend the stature of limitations for actions that do
2  not accrue until discovery of the action, such as this case, and
3  constitutes fraudulent concealment of rights sufficient to
4  equitably toll applicable statutes of limitations.

5      34)  During her "exit interview" process, it was falsely
6  misrepresented to Plaintiff that she had no claims or rights, had
7  no recourse against CSI and others, and that she owed CSI
8  approximately $120,000 for her on-the-job training since age
9  twelve.  Plaintiff had been taking orders from Defendant since
10 age twelve and was under the undue influence of Defendant CSI and
11 its agents.  Plaintiff had little formal education or
12 sophistication as she had been effectively isolated from
13 mainstream society and culture.  Initially, Plaintiff attempted
14 to pay off the alleged "debt" to an employer who had underpaid
15 her for years.  Plaintiff paid approximately $10,000 on an
16 unenforceable "Debt" for training and courses that was required
17 by her then employer, Defendant CSI, and was related to her job
18 performance.  Plaintiff seeks restitution of payments made on
19 this illegal and improper claim.

20     35)  Plaintiff was not given copies of the papers she was
21 pressured to sign at the beginning, during and end of her
22 employment with CSI.  Plaintiff is informed and believes that the
23 papers she was required to sign, and in particular the exit
24 documents, are part of a standard operating procedure used by CSI
25 and the Scientology enterprise as an ongoing fraud as against its
26 former victims including Plaintiff herein.  Much effort is made
27 to convince the departing employee that the waivers, releases,
28 confidentiality agreements and penalty clauses are legal.

18

PLAINTIFF'S COMPLAINT

27

1   Examples of termination papers are posted on the Internet.

2   Presumably Plaintiff was pressured and coerced to sign similar

3   papers to make her escape.  Examples of Scientology termination

4   papers on the net recite that former employees must not disclose

5   the working conditions or pay within Scientology, which is a

6   violation of the Labor Code, and that workers will pay "damages"

7   of $20,000, $50,000 or more if they exercise their rights of free

8   speech and rights under the Labor Code.  These illegal and

9   unenforceable papers intimidate many ex-Scientology employees

10  into silence.  Ex-Scientologists know of Hubbard's dictum that

11  the purpose of a lawsuit is to harass and destroy, not to win on

12  the merits.  Former staff members and others fear being sued into

13  financial ruin by Scientology.  The church has a reputation to

14  live up to.  See, e.g. Church of Scientology of Calif. v.

15  Wollersheim (1996) 42 Cal.App.4th 628 (Scientology has sued

16  lawyers, witnesses, judges and the entire Los Angeles Superior

17  Court with respect to a case of emotional distress.  See also the

18  underlying case at Wollersheim v. Church of Scientology (1989)

19  212 Cal.App.3d 872)

20      36)  Part of Defendant's sales pitch used to lure potential

21  employees such as Plaintiff is the representation that one of the

22  perks of the job is Scientology "advancement".  This is basically

23  not true for most and was not true for Plaintiff.  In practice,

24  employees, such as Plaintiff, are not allowed to advance very far

25  up the scale.  Most are stuck at about where they started for

26  years.  Seldom is any significant advancement into Scientology

27  obtainable by employees such as Plaintiff.  The higher level

28  teachings of Scientology, including L. Ron Hubbard's vetted story

19

PLAINTIFF'S COMPLAINT

28

1  (the "Genesis" of Scientology), confidential levels and "Advanced

2  Technologies" are unknown to most Scientologists and CSI

3  employees.  The cost of "graduating" to the level of the veiled

4  story is reportedly $350,000 and up.

5       37)  Plaintiff worked for the "Mother Church", CSI, for

6  thirteen years and had to leave and conduct research on the

7  internet to find out what the "religion" of Scientology is all

8  about.  If Scientology has a comprehensive "Bible" or other

9  similar materials, they did not give it to Plaintiff.

10  Ironically, most of Scientology dogma is so secret they do not

11  even disclose it to Scientologists.  Yet, Defendant CSI suggests,

12  when convenient and self-serving, that employees spend their

13  spare time in religious study, endeavors and contemplation.  They

14  are known to suggest that all of their employees are "ministers",

15  although these "ministers" work full time in commercial jobs and

16  know relatively little of the religion they supposedly

17  "minister".  At times, Defendant CSI suggests that it has zero

18  employees.  That is not true.  Defendant CSI has many employees

19  and Plaintiff was one of them.  At times herein material,

20  Plaintiff was an employee working a non-religious job in a

21  commercial enterprise for illegal wages.  Whether or not the

22  "church" was also a religious enterprise is irrelevant.  As

23  recognized by courts in cases such as Alamo, supra, concepts of

24  "religion", "non-profit" and "commercial" are not mutually

25  exclusive.  A religion engaged in commercial activities must

26  comply with labor laws.

27       38)  In 1996, while working for CSI, Plaintiff became

28  pregnant.  She was seventeen at the time, a minor.  Having

1 children was against the dictates of top management at

2 Scientology. At age seventeen, Plaintiff had only her job at CSI

3 and was dependant upon CSI for support. Plaintiff had been

4 working for far less than minimum wage, had no money, no car, no

5 place to call her own, and no medical insurance or coverage.

6 Plaintiff felt trapped and without viable options. She had an

7 abortion to keep her position at CSI and not risk the adverse

8 consequence of having her baby. It should not matter, but forced

9 abortions were business practices not "religious" rituals.

10      39) While she was working for CSI, Plaintiff was not told

11 of her rights as an employee of Defendant or of her basic human

12 rights. Plaintiff was not told of her rights to be paid a proper

13 wage for her labor or of her right not to be subjected to

14 physical punishment, sexual discrimination, coercion,

15 intimidation and forced labor. To the contrary, the message CSI

16 and the Scientology enterprise sends to its employees, including

17 Plaintiff, is that the employees must do as they are told, they

18 have no rights, and that the rights and powers of Scientology's

19 upper management are virtually unlimited, apparently because it

20 calls itself a church. Plaintiff had been essentially isolated

21 from the outside world since age twelve. Although Plaintiff was

22 essentially an employee at will who could theoretically quit the

23 employment without breaching a contract of employment, Plaintiff

24 did not know that to be her true situation. Plaintiff believed

25 dire consequences would befall her if she quit working for

26 Defendant. Defendant coerced and intimidated employees in many

27 ways, including the use of purported contracts of employment, as

28 leverage to prevent employees from leaving.

21

PLAINTIFF'S COMPLAINT

40)   Plaintiff seeks damages for herself and to make a point. The point being that CSI and other Scientology corporate shells must obey the law – including the labor laws.  The goals of this case include stopping the practice of ordering female employees to have abortions, stopping the practice of oppressive child labor and clearing the path for workers of Scientology organizations to obtain the compensation due them under state and federal labor laws.  Plaintiff seeks payment for her work at minimum wage, overtime pay and other remedies authorized by law.

41)   Plaintiff was a "born in" Scientologist.  That is the phrase typically used to describe those whose parents were Scientologists and who were recruited and indoctrinated at a young age through no fault or decision of their own.  Plaintiff and many of her fellow employees started when they were minors. Plaintiff did not freely, knowingly and competently sign away her rights at age twelve, or at any time thereafter.

42)   Plaintiff's maiden name is Laura A. Dieckman. Plaintiff uses her maiden name for most purposes; however, Plaintiff's current legal name is Laura Ann DeCrescenzo, which name is the product of a dissolved marriage.  Plaintiff is referred to hereinafter as "Laura D." or simply "Plaintiff". Plaintiff is currently a resident of New Mexico.

43)   Defendant Church of Scientology International (CSI) represents itself to be the "Mother Church" of Scientology.  CSI has its principal office and apparent headquarters in Los Angeles, California.  The County of Los Angeles is an appropriate venue for this action.

22

PLAINTIFF'S COMPLAINT

31

1    44)  Religious Technology Center (hereinafter "RTC")
2  purports to be a California non-profit corporation.  RTC's role
3  in the corporate shell game of the Scientology enterprise is to
4  police access and use of L. Ron Hubbard's works.  RTC supposedly
5  protects copyrighted material and trademarks.  RTC charges fees
6  for protection of intellectual property rights and is therefore
7  inherently a commercial enterprise.  Plaintiff was not employed
8  by RTC; however, RTC is described for informational purposes
9  because it is a Defendant in at least one related case and
10  because the head of RTC, David Miscavige, is well known to be the
11  absolute ruler of the Scientology enterprise.  CSI may be the
12  "Mother Church", but RTC and David Miscavige rule the Scientology
13  empire.

14    45)  At times herein material, and continuing, Defendant CSI
15  and unnamed entities within the Scientology enterprise including
16  Doe Defendants were and are enterprises conducting business, and
17  employers paying employees to conduct said business, within the
18  State of California and in interstate commerce.  Accordingly,
19  said Defendant is subject to California and Federal laws
20  concerning its work force, working conditions, business
21  practices, minimum wage, payment for overtime and the protection
22  of minors.  As alleged in more detail herein, Defendant has
23  systematically ignored and violated said laws to the damage of
24  Plaintiff Laura D. and others similarly situated.

### FIRST CAUSE OF ACTION FOR RESCISSION

### OF UNLAWFUL/FRAUDULENT INSTRUMENTS

46) Plaintiff realleges and incorporates the above paragraphs in their entirety and the allegations below in the Second and Third Causes of Action.

47) Plaintiff alleges that Defendant CSI, and its agents, mislead, deceived and/or coerced Plaintiff into signing various purported admissions, acknowledgments, waivers, releases, confidentiality agreements and employment contracts during the course of Plaintiff's employment and termination of said employment.

48) Plaintiff was not allowed to have copies of the documents Defendant CSI coerced and pressured her into signing and therefore cannot attach hereto as Exhibits the specific documents in question to be rescinded, negated and confirmed null and void pursuant to this cause of action.

49) Plaintiff is informed and believes that said documents are unlawful, unconscionable and otherwise properly the subject of this cause for rescission and/or cancellation.

50) Plaintiff is informed and alleges that said documents purport to waive Plaintiff's entitlement to the protection of State and Federal laws including her right to be paid minimum wage and overtime for her labors for Defendant CSI. The right to minimum wage and overtime is not waivable as a matter of law. Further, any such purported waiver of labor law protections would be unlawful and ineffective. See e.g. Labor Code §§206.5, 1194, Civil Code §3513 and Gentry v. Superior Court (2007)42 Cal. App. 4th 443, 456. Further, Plaintiff has certain inalienable rights under the California Constitution that could not be and would not be waived by the documents in question.

PLAINTIFF'S COMPLAINT

51)  Plaintiff is informed and alleges that said documents purport to exculpate Defendant and its agents from wrongful, unlawful and illegal conduct in violation of Civil Code Sections 1667 and 1668.  Civil Code §1668 states as follows:

> "All contracts which have for their object,
> directly or indirectly, to exempt any one from
> responsibility for his own fraud, or willful
> injury to the person or property of another, or
> violation of law, whether willful or negligent,
> are against the policy of the law."

52)  In addition to purportedly waiving rights that cannot be waived, Plaintiff is informed and alleges that said documents were executed under a lack of proper and freely given consent (Civil Code 1565-8), and are unconscionable, unenforceable and otherwise invalid and subject to rescission and/or cancellation by reason of duress, menace, fraud, undue influence, mistake and being unlawful.  (See Civil Code §§1569-1580.)  Further, unconscionable terms are unenforceable as a matter of law.  (See Civil Code §1670.5.)

53)  Plaintiff is therefore legally entitled to rescind and/or cancel any and all purported documents signed by her during the course of and at the termination of her employment with Defendant CSI to the extent said documents purport to waive rights that cannot be and were otherwise executed under improper circumstances.

54)  An action based upon rescission of an instrument in writing may be commenced within four years of discovery of the grounds for rescission such as fraud or mistake tainting any such

25

PLAINTIFF'S COMPLAINT

1   improper and invalid term or contract. Plaintiff brings this

2   action based upon rescission within four years of discovery of

3   the grounds. The action is therefore timely under CCP §337(3).

4       55) Plaintiff therefore seeks rescission and cancellation

5   of all documents in which she, directly or indirectly,

6   essentially and in effect, potentially waived her rights and

7   claims under the labor and human trafficking laws, free speech

8   and other inalienable rights under the California Constitution.

9                    **SECOND CAUSE OF ACTION FOR VIOLATION**

10                   **OF B&P CODE §17200 ET. SEQ**

11      56) Plaintiff realleges and incorporates the above

12  paragraphs in their entirety and the allegations below in the

13  Second and Third Causes of Action.

14      57) Defendant has engaged in an improper and illegal course

15  of conduct to coerce the performance of abundant cheap labor and

16  evade labor laws with respect to its employees, including

17  Plaintiff herein. Defendant CSI engaged in unlawful, unfair and

18  fraudulent business practices to the damage of Plaintiff and

19  others. Defendant CSI's improper activities include, but are not

20  limited to:

21          a)   failure to pay minimum wage;

22          b)   failure to pay overtime;

23          c)   failure to pay Social Security taxes for employees

24          d)   failure to give proper breaks, rest periods and days

25               off;

26          e)   depriving minors of required education;

27          f)   working minor employees illegal hours at illegal

28               tasks;

                              26

g) not paying full wages due within 72 hours of termination (In Plaintiff's case that would be several years of wages earned but not paid.);

h) demanding releases for wages due or to become due in violation of the Labor Code;

i) refusing employees access to their files;

j) coercing workers to sign instruments that purportedly govern employment rights upon demand and refusing to give workers copies of required documents;

k) Subjecting Plaintiff to the Rehabilitation Project Force ("RPF"). Plaintiff was subjected to incredible physical and emotional abuse while working in the RPF for over two years;

l) using the threat of debt to coerce employees;

m) Upon termination of employment, CSI claimed that Plaintiff breached various covenants of employment and owed CSI approximately $120,000 for purported training while working for CSI. The demand for payment for purported training was a further attempt to pay less than legal wages for labor performed, an unconscionable and unenforceable claim, a threat used to intimidate and coerce employees into continuation of working under unlawful conditions, and an illegal demand that an employee pay back compensation or employee benefits. The use of the "Freeloader Debt" to force workers into the performance of labor for Defendant is one of the

27

PLAINTIFF'S COMPLAINT

threats and coercive tactics used by Defendant to insure a continuation of forced labor from Plaintiff and other employees.  Further, Plaintiff paid over $10,000 on her "Freeloader Debt", which is sought herein as additional restitution damages;

n) Defendant CSI coerced Plaintiff into having an abortion when she was still a minor.  Plaintiff was required to have an abortion to keep her employment and avoid adverse consequences in her employment;

o) Requiring that employees submit to interrogation on a primitive lie detector type device called an e-meter in violation of state and federal laws prohibiting mandatory use of lie detectors or similar devices in interrogations and examinations as a condition of continued employment.  See e.g., Labor Code §432.2;

p) Engaging in Human Trafficking in violation of state and federal law as alleged in more detail below;

q) Refusing to give employees copies of signed instruments in violation of Labor Code §432;

r) Violation of Plaintiff's inalienable rights guaranteed by Article 1, Section 1 of the California Constitution including Plaintiff's right to privacy and to make her own free choice on having children.  See e.g. Hill v. National Collegiate Athletic Assn. (1994) 7 Cal.4th 1, 15-16 and American Academy of Pediatrics v. Lungren (1997) 16 Cal.4th 307, 332-334;

28

PLAINTIFF'S COMPLAINT

s)  Intimidating and attempting to silence potential

witnesses as an obstruction of justice and unfair

business practice.

58)  Consistent with its "the ends justify the means" approach, and the rationale that Scientology is the end to be sought at all costs, Defendant CSI intentionally, consciously and wrongfully made a tactical decision to ignore the labor laws, deceive employees about their rights, take chances with a compliant and intimidated work force, and hope that the running of statutes of limitations would in the long run save Defendant CSI and the Scientology enterprise millions of dollars.  For this and other reasons, Defendant should be estopped from asserting any statute of limitation defense to Plaintiff's claims for proper compensation for services rendered and any statute of limitation should be found inapplicable as a defense by reason of Defendant's deceit and concealment concerning Plaintiff's rights.

59)  Plaintiff has suffered injury in fact and has standing to sue under B&P Code §17203 by reason of the illegal and unfair business practices alleged herein.  Among other things, upon termination of her employment in 2004, Plaintiff was entitled to timely payment of all compensation earned but not paid during her employment at CSI.  At the time of termination, Defendant owed Plaintiff at least four years of back pay under B&P §17200 and the Labor Code, and potentially more pursuant to alternative legal theories under consideration, all of which comes to an amount well in excess of $100,000 and which will be sought in accordance with proof at trial.  Substantial back pay was due under the Labor Code.  Further, Defendant's continued violation

29

PLAINTIFF'S COMPLAINT

1  of the Labor Code satisfies the requirements of the "continuing

2  violations doctrine". Under said doctrine all unpaid wages over

3  the many years of Defendant's "continuing violations" of the

4  Labor Code are recoverable herein. See e.g. Watson v. Department

5  of Rehabilitation, 212 Cal. App. 3d 1271, 1290. Full back pay

6  for all years of work are also recoverable as human trafficking

7  damages. Plaintiff also seeks and is entitled to restitution of

8  amounts paid to CSI after her termination on the false

9  "Freeloader Debt" claim.

10      60) Plaintiff brings this action for the public good and is

11  therefore entitled to recover reasonable attorney's fees and

12  costs. (C.C.P. 1021.5)

13              **THIRD CAUSE OF ACTION FOR DISCRIMINATION**

14                    **AND INVASION OF PRIVACY**

15      61) Plaintiff realleges all paragraphs above in support of

16  her second cause of action for sex-based discrimination.

17      62) Plaintiff was employed by Defendant CSI from 1991 to

18  2004. During this time, Plaintiff became pregnant on one

19  occasion. Plaintiff was coerced to terminate the pregnancy by a

20  forced abortion. Plaintiff was required to abort her child to

21  remain an employee in good standing with Defendant and to avoid

22  adverse consequences in her future employment. Further,

23  Plaintiff was intimidated and coerced into not becoming pregnant

24  again, or having a family, to keep her employment with Defendant

25  CSI. Plaintiff is aware that coercing employees to have unwanted

26  abortions was a relatively common practice at CSI and in the

27  Scientology enterprise. Plaintiff has knowledge of other female

28  employees ordered to have abortions.

                              30
                    PLAINTIFF'S COMPLAINT

                          39

63) Forcing pregnant employees to have abortions constitutes discrimination against female employees, a violation of state and federal law and a violation of Plaintiff's inalienable constitutional rights, including the rights of privacy. See e.g. Rojo v. Kliger (1990) 52 Cal.3d. 65, 82, 89-90, Hill v. National Collegiate Athletic Assn., *supra* and American Academy of Pediatrics v. Lungren, *supra*. Defendant ordered and coerced abortions primarily to get more work out of their female employees and to avoid child care issues.

64) While employed by CSI, Plaintiff was subjected to hours of questioning on a device known as an e-meter. The e-meter was represented to Plaintiff by Defendant to be an almost infallible lie detector that would reveal any lies or omissions. Plaintiff was led to believe she could have no secrets or private thoughts that would not be discovered by Defendant and used against her. Plaintiff's rights of privacy were coercively violated by the use of the e-meter interrogation process, (see e.g. Labor Code §432.2) and which constitutes actionable invasion of privacy under California tort law.

65) Pursuant to the law, Plaintiff is entitled to an award for reasonable attorney's fees and costs and damages for forced abortions and invasion of privacy according to proof. This claim is made for the public good and to discourage this outrageous conduct from continuing into the future.

### FOURTH CAUSE OF ACTION FOR HUMAN TRAFFICKING

66) Plaintiff realleges all paragraphs above in support of her third cause of action for human trafficking.

40

67)   Penal Code Section 236.1 states in pertinent part as follows: "(a) Any person who deprives or violates the personal liberty of another…, to obtain forced labor or services, is guilty of human trafficking."

68)   Subsection (d)(1) of Penal Code Section 236.1 clarifies that a victim's personal liberty is deprived when there is a "substantial and sustained restriction of another's liberty accomplished through fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person[….]"

69)   Subsection (d) of Penal Code Section 236.1 defines "forced labor or services" as "labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, or coercion, or equivalent conduct that would reasonably overbear the will of the person."

70)   California Civil Code Section 52.5 authorizes a civil cause of action for victims of human trafficking, and which defines human trafficking by reference to Penal Code Section 236.1.

71)   Defendant CSI deprived Plaintiff of her personal liberty by substantially restricting her freedoms and by its systematic practice of threatening, coercive tactics, which were and are intended to restrict workers such as Plaintiff from freedom of movement, thought and choice, and from obtaining access to the outside world, deprive them of meaningful competitive options, and subjugate the workers' will to that of Defendant.  Plaintiff was forced to expose her thoughts in lie detector type sessions.  It was dangerous to even think of

32

PLAINTIFF'S COMPLAINT

A1

1  escaping.  Defendant thus deceitfully, fraudulently and
2  coercively secured, at the expense of Plaintiff's liberty, forced
3  labor at subhuman wages.

4      72)  Plaintiff was deprived of normal liberties as a matter
5  of standard course. Her freedom of movement was essentially
6  restricted to her base.  Contact with the outside world was very
7  limited and strictly controlled by Defendant.  When Plaintiff's
8  liberties weren't being deprived, they were being violated by
9  Defendant, who opened and read Plaintiff's mail. Foreign workers
10 had their passports taken.

11     73)  Defendant would subject workers who fail to follow
12 orders to severe, sometimes corporal, punishment. Workers who are
13 caught trying to escape have been physically assaulted and
14 restrained.  Defendant employs one particular punishment which
15 involves relegating workers to a program known as the
16 Rehabilitation Project Force (or "RPF"). Workers assigned to the
17 RPF are subjected to a brutal regimen of manual labor, have no
18 freedom of movement and are subjected to almost total
19 deprivations of personal liberties.

20     74)  The RPF, and similar atrocities, are used to coerce
21 workers into providing cheap labor and working under illegal
22 conditions.  Plaintiff spent over two years on the RPF and was
23 headed back to the RPF when she escaped by swallowing bleach and
24 pretending to be suicidal.

25     75)  Plaintiff has been damaged by reason of providing
26 forced labor to Defendant, which damages will be sought in
27 accordance with proof at trial and to the full extent authorized
28 by law, including Civil Code Section 52.5 et seq.

33

PLAINTIFF'S COMPLAINT

42

## FIFTH CAUSE OF ACTION FOR INTENTIONAL

## INFLICTION OF EMOTIONAL DISTRESS

76)   Plaintiff realleges all paragraphs above in support of her fourth cause of action for intentional infliction of emotional distress.

77)   Defendant CSI, as part of the Scientology enterprise, uses infliction of emotional distress as a tool to subjugate its workers such as Plaintiff.  Defendant CSI intentionally inflicted emotional distress on Plaintiff to control, coerce, manipulate, punish and deceive her.  In particular, Defendant's use of the RPF and "sec checking" procedures on a primitive lie detector were calculated to inflict substantial emotional distress upon Plaintiff.

78)   Security checking is a process whereby an employee, such as Plaintiff, is interrogated on a primitive lie detector known as an e-meter.  This process is designed and employed to make sure that the worker has no thoughts of trying to escape or becoming a Scientology risk.  Employees such as Plaintiff are told, and come to believe, that they can have no secrets from management.  Any such secrets or bad thoughts will be exposed in "sec checks" on the e-meter.  This process started for Plaintiff on or before her first planned visit with her parents and continued for her fifteen years of working for Defendant CSI. The sec checking procedure constitutes a gross invasion of privacy and is used to gather embarrassing data on employees. The threat of using confidential and embarrassing information collected and recorded in the "sec check" process is used to

34

PLAINTIFF'S COMPLAINT

43

1  control employees such as Plaintiff. This practice borders on

2  blackmail and violates both State and Federal law.

3      79) In the RPF, Plaintiff was forced to do manual labor and

4  live under incredibly harsh conditions. Plaintiff's pay was

5  docked while working in the RPF for Defendant CSI and she was

6  closely guarded at all times. Plaintiff was confined to

7  particular areas and her personal liberties and rights were

8  violated on a continual basis. Further, Plaintiff only recently

9  learned that CSI may have legal responsibility for its wrongful

10  conduct and that this legal responsibility would not be destroyed

11  or lost by reason of documents Plaintiff was coerced into signing

12  under duress when she was "offloaded" as a security risk for

13  swallowing bleach and exhibiting suicidal thoughts or tendencies.

14      80) At times herein material, Defendant CSI intentionally

15  inflicted serious emotional distress upon Plaintiff all to her

16  damage, which will be sought in accordance with proof at trial.

17  Irrespective of whatever it claims to be, profit or non-profit,

18  CSI is not immune to suits for tortious conduct such as

19  infliction of emotional distress. See e.g. Wollersheim v. Church

20  of Scientology (1989) 212 Cal.App.3d 872, 880, Molko v. Holy

21  Spirit Assn. (1988) 46 Cal.3d 1092 and Richelle L. v. Roman

22  Catholic Archbishop (2003) 106 Cal.App.4th 257, 276-9.

23      81) Defendant CSI, its agents and controlling persons acted

24  with malice and in accordance with the stated and unstated, but

25  true, policies of CSI and the Scientology enterprise in

26  inflicting emotional distress upon Plaintiff.

    **SIXTH CAUSE OF ACTION FOR OBSTRUCTION OF JUSTICE**

27

28

PLAINTIFF'S COMPLAINT

1    82) Plaintiff realleges all paragraphs above in support of

2  her fifth cause of action for obstruction of justice/witness

3  tampering and retaliation in violation of the California Labor

4  Code.

5    83) Plaintiff and others similarly situated have a legal

6  right to pursue valid claims against the Scientology enterprise,

7  including Defendant CSI, petition the courts for labor abuses and

8  human trafficking without retaliation, petition this court for

9  redress and remedies, use legal process to gather and compel the

10  production and introduction of evidence in support of her case.

11  Defendant CSI and the Scientology enterprise are wrongfully

12  trying to buy-off, intimidate and coerce potential witnesses

13  favorable to Plaintiff's case.  This course of conduct is illegal

14  under the California Penal Code (See Sections 136.1, 189 & 139)

15  and unlawful under common law and B&P §17200 as an unfair and

16  unlawful business practice.  Plaintiff's remedies include

17  restitution and injunctive relief barring such witness tampering

18  as a wrongful business practices under B&P §17200 et. seq.

19    84) The Scientology enterprise, including the "Mother

20  Church" CSI, has engaged in conduct designed to intimidate

21  potential witnesses and former employees with similar experiences

22  and claims.  Defendant has engaged in a wrongful course of

23  conduct to interfere with cases brought against any Scientology

24  organization including Defendant CSI and retaliate against

25  persons with labor claims against CSI and/or persons having

26  admissible evidence adverse to Defendant CSI.

27    85) Plaintiff is informed and believes that potential

28  witnesses and former employees with similar claims have been

36

PLAINTIFF'S COMPLAINT

45

1  contracted by Defendant's nefarious Office of Special Affairs

2  ("OSA").  Various threats have been made against relatives of

3  potential witnesses, co-claimants and/or potential class members,

4  should this evolve into a class action.  Reportedly, persons have

5  been coerced, intimidated or pressured into signing various

6  documents that purport to be waivers, statements of non-

7  liability, confidentiality agreements and liquidated damage

8  agreements.  Some have refused to sign but are wary of getting

9  involved and coming forward with the truth concerning Defendant.

10 The purported agreements being pushed upon potential witnesses

11 and plaintiffs are essentially hush agreements not to testify or

12 come forward with the truth about working conditions in

13 Scientology organizations.  Defendant is coercing and deceiving

14 people into giving up their liberty of speech and potential

15 claims against Defendant CSI.  See California Constitution

16 Article 1, §2.  Defendant and its agents are engaged in a

17 wrongful attempt to cover-up illegal conduct.

18     86)  Defendant's gag agreements are intended to silence

19 potential witnesses who know the truth about working conditions

20 at CSI.  Plaintiff seeks to challenge this wrongful, illegal

21 conduct and free all witnesses to come forward and give their

22 evidence, without fear of retaliation from the Scientology

23 enterprise.

24     87)  Plaintiff is informed and believes, and according to a

25 post on the Internet by one of Scientology's former top leaders,

26 that the leader of the Scientology enterprise is offering hush

27 money in the form of "forgiving" Freeloader Debts to people who

28 sign agreements not to join in or give any assistance to labor

37

46

1  cases being brought against CSI and RTC.  This case falls into
2  that category of labor cases adverse to CSI.

3      88)  In addition to past gag agreements executed under
4  duress by departing employees, Defendant CSI and its Scientology
5  operatives have gone on a "mission" to silence and buy off
6  witnesses and potential plaintiffs in the pending labor cases
7  currently filed in Los Angeles Superior Court.

8      89)  In addition to buying silence with the purported debt
9  forgiveness, Defendant CSI has used threats of punishing friends
10 and family as the currency with which to buy off potential
11 witnesses and claimants.

12     90)  Defendant's efforts to silence witnesses by threats,
13 coercion, forgiveness of alleged "Freeloader Debt"  and threats
14 of breaking up families, constitutes obstruction of justice,
15 witness tampering and illegal retaliation for making claims under
16 the California Labor Code.  This conduct also constitutes an
17 unfair business practice under B&P §17200.

18     91)  The wrongful intimidation into silence of even one
19 potential witness is a loss that should not be tolerated by this
20 or any court.  Plaintiff and others seeking justice against
21 Scientology will be damaged by Defendant's wrongful conduct and
22 will incur additional costs and attorney's time by reason of
23 wrongful purported confidentiality agreements that Scientology
24 has effectuated, and will continue to pursue, in its mission to
25 defeat labor claims by coercing and intimidating potential
26 plaintiffs and witnesses.

27     WHEREFORE, Plaintiff requests:

28     1)  A jury trial;

2)   Rescission and total negation of all unlawful and
     unenforceable instruments executed by Plaintiff during
     the course of her employment with Defendant including
     documents signed upon termination of employment;

3)   Restitution according to proof under the First Cause of
     Action, including payment of all wages and compensation,
     Social Security benefits and restitution of amounts paid
     on the bogus "Freeloader Debt";

4)   All damages authorized by Civil Code §52.5(a) et. seq.,
     for human trafficking as alleged in the Third Cause of
     Action, including actual damages, back pay, compensatory
     damages, punitive damages, injunctive relief and treble
     actual damages;

5)   An injunction or restraining order barring intimidation
     of potential witnesses, and claimants, and barring the
     use of compensation in any form to entice witnesses into
     silence or hush agreements described as "Confidentiality
     Agreements" or "Confidential Settlements";

6)   An award of reasonable attorney's fees computed with an
     appropriate lodestar in consideration of the difficult
     and litigious nature of Defendant;

7)   Such other relief as the court may deem just including
     costs.

April 1, 2009

_____
BARRY VAN SICKLE
Attorney for Plaintiff
LAURA ANN DeCRESCENZO

39
PLAINTIFF'S COMPLAINT

48

**EXHIBIT B**

POS-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Barry Van Sickle, Bar No. 98645<br>1079 Sunrise Avenue, Suite B-315<br>Roseville, CA  95661<br><br>TELEPHONE NO.: **(916) 549-8784**    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* bvansickle@surewest.net<br>ATTORNEY FOR *(Name):* Plaintiff Laura DeCresenzo | **FOR COURT USE ONLY**<br><br>**FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>APR 22 2009<br><br>JOHN A. CLARKE, CLERK<br><br>BY RUGENA LOPEZ, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles  90012
BRANCH NAME: Central

| | |
|---|---|
| PLAINTIFF/PETITIONER: Laura A. DeCresenzo<br><br>DEFENDANT/RESPONDENT: Church of Scientology International | **CASE NUMBER:**<br>BC411018 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1.   At the time of service I was at least 18 years of age and not a party to this action.

2.   I served copies of:
   a.  [✓]  summons
   b.  [✓]  complaint
   c.  [✓]  Alternative Dispute Resolution (ADR) package
   d.  [ ]  Civil Case Cover Sheet *(served in complex cases only)*
   e.  [ ]  cross-complaint
   f.  [✓]  other *(specify documents):* Notice of Related Case

3.   a.  Party served (specify name of party as shown on documents served):

     Church of Scientology International

   b.  [✓]  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
     Jeanne Reynolds aka Jeanne M. Gavigan, Agent for Service of Process

4.   Address where the party was served: 3055 Wilshire Boulevard, Suite 900
   Los Angeles, CA  90010

5.   I served the party (check proper box)
   a.  [ ]  by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on (date):      (2) at (time):
   b.  [✓]  by substituted service. On (date): 04/03/2009    at (time): 10:00am  I left the documents listed in item 2 with or in the presence of (name and title or relationship to person indicated in item 3): Paul, Office Manager

     (1)  [✓]  (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

     (2)  [ ]  (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

     (3)  [ ]  (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

     (4)  [✓]  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on (date): 04/22/2009 from (city): Roseville, CA    or [ ]  a declaration of mailing is attached.

     (5)  [ ]  I attach a declaration of diligence stating actions taken first to attempt personal service.

49

| PLAINTIFF/PETITIONER: Laura A. DeCresenzo | CASE NUMBER: BC411018 |
|---|---|
| DEFENDANT/RESPONDENT: Church of Scientology International | |

**5. c.** ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*               (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

**d.** ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

**6.** The "Notice to the Person Served" (on the summons) was completed as follows:
  **a.** ☐ as an individual defendant.
  **b.** ☐ as the person sued under the fictitious name of *(specify):*
  **c.** ☐ as occupant.
  **d.** ☑ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☑ 416.10 (corporation)           ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)            ☐ 415.46 (occupant)
                            ☐ other:

**7. Person who served papers**
  **a.** Name: Barry Van Sickle
  **b.** Address: 1079 Sunrise Avenue, Suite B-315
  **c.** Telephone number: (916) 549-8725
  **d.** The fee for service was: $0
  **e.** I am:
    (1) ☑ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

**8.** ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

**9.** ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:

Barry Van Sickle                  ▶ *[signature]*
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)        (SIGNATURE)

POS-010 [Rev. January 1, 2007]

**EXHIBIT C**

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Barry Van Sickle - Bar No. 98645<br>1079 Sunrise Avenue<br>Suite B-315<br>Roseville, CA 95661<br><br>TELEPHONE NO.: (916) 549-8784   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* bvansickle@surewest.net<br>ATTORNEY FOR *(Name):* Plaintiff LAURA ANN DeCRESCENZO | *FOR COURT USE ONLY*<br><br>**FILED**<br>Los Angeles Superior Court<br><br>APR 02 2009<br><br>John A. Clarke, Executive Officer/Clerk<br>By _____, Deputy<br>DOROTHY SWAIN |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles |
|---|
| STREET ADDRESS: 111 North Hill Street |
| MAILING ADDRESS: 111 North Hill Street |
| CITY AND ZIP CODE: Los Angeles, CA  90012 |
| BRANCH NAME: Central |

| PLAINTIFF/PETITIONER: LAURA ANN DeCRESCENZO | CASE NUMBER:<br>BC411018 |
|---|---|
| DEFENDANT/RESPONDENT: CHURCH OF SCIENTOLOGY INTERNATIONAL | JUDICIAL OFFICER: |
| **NOTICE OF RELATED CASE** | DEPT: |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1.  a.  Title: Marc Headley v. Church of Scientology, et. al.
    b.  Case number: BC404958
    c.  Court: ☑ same as above
        ☐ other state or federal court *(name and address):*
    d.  Department: **56**
    e.  Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*
    f.  Filing date: January 5, 2009
    g.  Has this case been designated or determined as "complex?" ☐ Yes ☑ No
    h.  Relationship of this case to the case referenced above *(check all that apply):*
        ☐ involves the same parties and is based on the same or similar claims.
        ☑ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
        ☐ involves claims against, title to, possession of, or damages to the same property.
        ☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
            ☐ Additional explanation is attached in attachment 1h
    i.  Status of case:
        ☑ pending
        ☐ dismissed ☐ with ☐ without prejudice
        ☐ disposed of by judgment

2.  a.  Title: Claire Headley v. Church of Scientology, et. al.
    b.  Case number: BC405834
    c.  Court: ☑ same as above
        ☐ other state or federal court *(name and address):*
    d.  Department: 56

Page 1 of 3

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov |
|---|---|---|

www.accesslaw.com

CM-015

| | |
|---|---|
| PLAINTIFF/PETITIONER: LAURA ANN DeCRESCENZO<br>DEFENDANT/RESPONDENT: CHURCH OF SCIENTOLOGY INTERNATIONAL | CASE NUMBER: |

2. *(continued)*

　　e. Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

　　f. Filing date: January 20, 2009

　　g. Has this case been designated or determined as "complex?" ☐ Yes ☑ No

　　h. Relationship of this case to the case referenced above *(check all that apply)*:

　　　　☐ involves the same parties and is based on the same or similar claims.

　　　　☑ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

　　　　☐ involves claims against, title to, possession of, or damages to the same property.

　　　　☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

　　　　　　☐ Additional explanation is attached in attachment 2h

　　i. Status of case:

　　　　☑ pending

　　　　☐ dismissed ☐ with ☐ without prejudice

　　　　☐ disposed of by judgment

3. a. Title:

　　b. Case number:

　　c. Court: ☐ same as above

　　　　☐ other state or federal court *(name and address)*:

　　d. Department:

　　e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

　　f. Filing date:

　　g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

　　h. Relationship of this case to the case referenced above *(check all that apply)*:

　　　　☐ involves the same parties and is based on the same or similar claims.

　　　　☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

　　　　☐ involves claims against, title to, possession of, or damages to the same property.

　　　　☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

　　　　　　☐ Additional explanation is attached in attachment 3h

　　i. Status of case:

　　　　☐ pending

　　　　☐ dismissed ☐ with ☐ without prejudice

　　　　☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: April 9, 2009

Barry Van Sickle
_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]　　　　　　　　　**NOTICE OF RELATED CASE**　　　　　　　　　Page 2 of 3

CM-015

| PLAINTIFF/PETITIONER: LAURA ANN DeCRESCENZO | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CHURCH OF SCIENTOLOGY INTERNATIONAL | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☐ deposited the sealed envelope with the United States Postal Service.
   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):*
   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:
   a. Name of person served:

      Street address:
      City:
      State and zip code:

   b. Name of person served:

      Street address:
      City:
      State and zip code:

   c. Name of person served:

      Street address:
      City:
      State and zip code:

   d. Name of person served:

      Street address:
      City:
      State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

| CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Page 3 of 3 |
|---|---|---|

53

**EXHIBIT D**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 04/30/09                                                          DEPT. 56

HONORABLE JANE L. JOHNSON           JUDGE   C. WRIGHT          DEPUTY CLERK
                                            S. WORKU, C.A.
HONORABLE                        JUDGE PRO TEM                 ELECTRONIC RECORDING MONITOR

                                 Deputy Sheriff  NONE                 Reporter

8:30 am BC411018                          Plaintiff
                                          Counsel
        LAURA ANN DECRESCENZO                        NO APPEARANCES
                                          Defendant
                VS                        Counsel
        CHURCH OF SCIENTOLOGY
         INTERNATIONAL

**NATURE OF PROCEEDINGS:**

COURT'S RULING REGARDING NOTICE OF RELATED CASE

The Court, having read and considered the Notice of
Related Case filed April 22, 2009 by Plaintiff, deems
this case, BC411018, not related to cases BC404958
and BC405834 because it involves a different party,
and while based on some similar claims, concerns
different incidents and transactions.  California
Rule of Court 3.300(a)(1), and (2).

Counsel for moving party/Plaintiff is ordered to give
notice.

                CLERK'S CERTIFICATE OF MAILING/
                  NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
Apr 30, 2009 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: April 30, 2009

                Page   1 of   2   DEPT. 56

MINUTES ENTERED
04/30/09
COUNTY CLERK

54

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 04/30/09 | | DEPT. 56 |
| HONORABLE JANE L. JOHNSON   JUDGE | C. WRIGHT | DEPUTY CLERK |
| HONORABLE                  JUDGE PRO TEM | S. WORKU, C.A. | ELECTRONIC RECORDING MONITOR |
| Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 8:30 am BC411018 | Plaintiff Counsel | |
| LAURA ANN DECRESCENZO | | NO APPEARANCES |
| VS | Defendant Counsel | |
| CHURCH OF SCIENTOLOGY INTERNATIONAL | | |

NATURE OF PROCEEDINGS:

John A. Clarke, Executive Officer/Clerk

By:  *C. Wright*
     ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
     C. Wright, Deputy

Barry Van Sickle
Attorney at Law
1079 Sunrise Avenue, Suite B-315
Roseville, CA  95661

Page  2 of  2   DEPT. 56

MINUTES ENTERED
04/30/09
COUNTY CLERK

**EXHIBIT E**

● **FILED**
LOS ANGELES SUPERIOR COURT

MAY 19 2009

JOHN A. CLARKE, CLERK

BY MARY GARCIA, DEPUTY

1  BARRY VAN SICKLE - BAR NO. 98645
   1079 Sunrise Avenue
2  Suite B-315
   Roseville, CA  95661
3  Telephone: (916) 549-8784
   E-Mail:  bvansickle@surewest.net
4
5  Attorney for Plaintiff
   LAURA ANN DeCRESCENZO
6
7          SUPERIOR COURT OF THE STATE OF CALIFORNIA
8                 COUNTY OF LOS ANGELES
9
10 LAURA ANN DeCRESCENZO, aka      ) CASE NO. BC411018
   LAURA A. DIECKMAN,             )
11              Plaintiff,        ) PLAINTIFF'S FIRST AMENDED
                                  ) COMPLAINT FOR:
12      vs.                       )
                                  )  1) RECISSION OF UNLAWFUL,
13 CHURCH OF SCIENTOLOGY          )     FRAUDULENT INSTRUMENTS
   INTERNATIONAL, a corporate     )  2) UNPAID WAGES RECOVERABLE
14 entity, AND DOES 1 - 20        )     UNDER B&P §17200 ET. SEQ
                                  )  3) DISCRIMINATION & INVASION
15          Defendants            )     OF PRIVACY
                                  )  4) FORCED LABOR aka HUMAN
16                                )     TRAFFICKING
                                  )  5) INTENTIONAL INFLICTION OF
17                                )     EMOTIONAL DISTRESS
                                  )  6) OBSTRUCTION OF JUSTICE
18                                )  7) FRAUD AND DECEIT
                                  )
19                                )
                                  ) ASSIGNED TO THE HONORABLE
20                                ) RONALD M SOHIGIAN, DEPT. 41
21 ───────────────────────────────
22
23                      **OVERVIEW**
24      1)    There are two very different versions of Scientology.
25 There is the Scientology as presented to the outside world and
26 there is a different Scientology in which Plaintiff lived and
27 worked for approximately thirteen years.  In the Scientology
28 world Plaintiff experienced, twelve year old children are taken

                              1
              PLAINTIFF'S FIRST AMENDED COMPLAINT

56

1  from their homes, asked to sign employment contracts and put to
2  work.  Pregnant women are coerced to have abortions.  Employees
3  work 100 hour weeks in secular activities for wages far below
4  minimum wage.  There are no contributions to Social Security or
5  employee pensions, although there is plenty of money to pay
6  Scientology's Chairman of the Board, private investigators and
7  lawyers.  Personal freedoms are restricted and severe punishments
8  are used to keep employees in line.  Passports are taken from
9  foreign workers and the infirm are discarded if they cannot
10 perform.  For reasons obvious to those who know the real
11 Scientology, it fears the truth and works hard to suppress and
12 deny it at almost any cost.  That is the context of this
13 litigation.

14      2)   The gist of the case is to recover past due wages,
15 interest, other economic damages and attorney's fees for
16 Defendant Church of Scientology International's (CSI) many years
17 of continuing labor and human trafficking violations.  (See,
18 Watson v. Department of Rehabilitation (1989) 212 Cal.App.3d
19 1271, 1290 re the "continuing violations" doctrine.)  In related
20 causes of action, Plaintiff also complains that she was coerced
21 to have an abortion, was the victim of intentional infliction of
22 emotional distress and that Defendant is attempting to silence
23 other employees who are potential witnesses and co-plaintiffs in
24 this case.  Illustrative of Plaintiff's experiences while working
25 for Defendant is the fact that she displayed suicidal tendencies
26 and swallowed bleach to expedite her quest for freedom.

27      3)   Plaintiff's First Cause of Action seeks to rescind,
28 cancel, void, negate and confirm unenforceability of the

2

57

1   purported waivers, confidentiality agreements and penalty clauses
2   she was forced to sign by Defendant and/or its agents.   As shown
3   below, most, if not all, of the rights in question cannot be
4   waived.   After addressing various purported waivers and related
5   documents which are unlawful and unenforceable on numerous
6   grounds, including coercion and duress, Plaintiff seeks to
7   recover compensation, with interest, due her for her years of
8   work for Defendant CSI at below minimum wage and for forced and
9   coerced labor under the Human Trafficking laws.   Labor Code
10  §218.6 expressly provides for interest on unpaid wages from the
11  date payment was due.
12      4)   The right to minimum wage is not waivable.   The Labor
13  Code expressly provides that an employee may recover minimum wage
14  in a civil action even if there was an agreement to the contrary
15  (Labor Code §1194).   It is unlawful for an employer to seek a
16  waiver of wage claims (Labor code §206.5).   Unlawful contracts
17  are invalid (C.C. 1667, 1668 & 1689); violations of law cannot be
18  excused by exculpatory clauses (C.C. 1668); and contracts tainted
19  by fraud, duress, coercion, mistake or unconscionable terms are
20  invalid and subject to rescission.   See, e.g. Civil Code §§1565
21  et. seq. and Civil Code 1688 et. seq.)   The statute of
22  limitations applicable to this case is four years from discovery
23  of grounds for rescission or for an action under B&P §17000; and
24  five years for human trafficking.   Plaintiff has timely filed
25  this action.   (See e.g. CCP 337 & 338.)
26      5)   Plaintiff started working for a Scientology
27  organization in her hometown at the age of nine.   She obtained a
28  work permit and became effectively a full-time employee of

3

PLAINTIFF'S FIRST AMENDED COMPLAINT

1 Scientology from age ten.  At age 12, Plaintiff signed her first
2 "Contract of Employment".  She left school, home and family to
3 work for the Church of Scientology International ("CSI").  This
4 required that plaintiff move to another state.  She was married
5 to a co-worker at age sixteen, became pregnant while still a
6 minor and was coerced by CSI to have an abortion at age
7 seventeen.  Plaintiff escaped in 2004 at age twenty-five.  For
8 over 13 years, Plaintiff worked under illegal conditions and for
9 illegal pay.  There are hundreds, probably thousands, of past and
10 present employees of CSI who experienced similar violations of
11 rights, however, most are ignorant of their rights, under the
12 misapprehension they had no rights or are fearful that they might
13 be sued or attacked under color of law by reason of purported
14 agreements including unlawful and unenforceable waivers, penalty
15 and gag provisions.
16     6)   Plaintiff is uncertain with respect to the identity of
17 all persons or entities responsible and liable for this wrongful
18 conduct and names said potential parties as Doe Defendants 1 - 10
19 as authorized by California law.  Doe Defendants 11 - 20 are
20 those potential Defendants who may participate in wrongful
21 retaliation, witness intimidation and fraudulent transfer or
22 concealment of assets to avoid payment of judgment in this case.
23              **BASIC SUPPORTING LEGAL PRINCIPLES**
24     7)   Plaintiff's case is supported by statutory law and
25 decisions of the U.S. Supreme Court, the California Supreme
26 Court, the California Court of Appeals and the Ninth Circuit
27 Court of Appeals.  Defendant CSI, which is part of the
28 Scientology enterprise ("Scientology"), typically claims First

4

PLAINTIFF'S FIRST AMENDED COMPLAINT

1   Amendment or waiver type defenses to violations of state and

2   federal law; however, under controlling authorities Defendant is

3   subject to labor laws and other neutral laws of general

4   applicability.  Further, certain legal and fundamental rights in

5   question cannot be waived.  Defendant's efforts to escape

6   responsibility for illegal acts by coercing exculpatory contracts

7   and forcing waivers and admissions under duress are ineffective

8   as a matter of law.  See e.g. Civil Code §1668.  (Additional

9   authorities are referenced and cited below.)

10       8)   The U.S. Supreme Court has ruled that non-profit and

11  religious entities must abide by labor laws including laws on

12  wages and employment of minors.  In the Alamo case (cited below),

13  the court also found that persons performing work for a religious

14  entity are covered by the labor laws even if they claim not to

15  want or qualify for the protection of the labor laws.  Workers of

16  religious entities are protected by the labor laws irrespective

17  of whether workers consider themselves to be employees.  The

18  protection of labor laws cannot be waived or negated by having

19  workers claim to be "volunteers" not "employees".  For purposes

20  of minimum wage and child labor laws, employment is evaluated by

21  reference to facts and conduct, not labels and legalistic form

22  documents.  Under the Federal labor laws, the courts employ a

23  test of "economic reality" in evaluating the employer/employee

24  relationship.  See, e.g. Tony & Susan Alamo Foundation v. Sec. of

25  Labor, (1985) 471 US 290.  In accord, Mitchell v. Pilgrim

26  Holiness Church Corp. 210 F.2d 879 (7th Cir. 1954). See also,

27  Prince v. Massachusetts, (1944) 321 U.S. 158 (Child Labor).

28

1     9)   The California Supreme Court and the Ninth Circuit

2 Court of Appeals have also found in well-considered opinions that

3 a religion, which CSI claims to be, would not be exempt from laws

4 of general applicability such as the labor laws.  There is no

5 constitutional right to exemption from minimum wage and child

6 labor laws.  <u>Elvig v. Calvin Presbyterian Church</u>, 397 F.3d 790,

7 792 (9th Cir. 2003) (citing 3 U.S. Supreme Court cases).  See

8 also, <u>North Coast Women's Care Medical Group, Inc. v. Superior</u>

9 <u>Court</u>, (2008) 44 Cal.4th 1145.

10     10)   The California courts also require that employment be

11 evaluated by objective standards.  An "employee" who is called an

12 independent contractor, a volunteer or religious worker is still

13 an employee.  The misclassification of workers to avoid the cost

14 of employment has been rebuffed by the appellate courts and is

15 the subject of a warning in the Department of Industrial

16 Relations website, which cites <u>JKH Enterprises, Inc. v.</u>

17 <u>Department of Industrial Relations</u> (2006) 142 Cal.App.4th 1046.

18 A leading California case on this point is <u>S. G. Borello & Sons,</u>

19 <u>Inc. v. Department of Industrial Relations</u> (1989) 48 Cal.3d 341

20 ("The label placed by the parties on their relationship is not

21 dispositive, and subterfuges are not countenanced", <u>Borello</u>,

22 <u>supra</u> at 48 Cal. 3d 349).  Share farmers who sign printed forms

23 expressly "agreeing" to be independent contractors not

24 "employees" are still employees in the eyes of the law.  <u>Borello</u>,

25 <u>supra</u> at 48 Cal.3d 357.  As the court observed when evaluating

26 employment in <u>Estrada v. FedEx Ground Package System, Inc.</u> (2007)

27 154 Cal.App.4th 1, 10:  "…[I]f it looks like a duck, walks like a

28 duck, swims like a duck and quacks like a duck, it is a duck."

6

1   Simply put, if it looks like employment and has the attributes of

2   employment, it is employment, for purposes of the labor laws.

3   The waiver rule applies to attempted mischaracterization of

4   employees.  An "employee" does not effectively waive any rights

5   by signing employment documents in which the employee "agrees" to

6   be a non-employee – be it a false designation of independent

7   contractor or something similar under labor laws such as

8   "volunteer" (Borello, Id).  The protections of the labor laws

9   cannot be lost, and the underlying reality is not changed, by

10  Scientology's aggressive use of self-serving documents (Borello,

11  Id).  See also, Civil Code §3513, Labor Code 1194, County of

12  Riverside v. Superior Court (Madrigal) (2002) 27 Cal.4th 793 and

13  Abramson v. Juniper Networks, Inc. (2004) 115 Cal.App.4th 638.

14  Also pertinent is Civil Code §1668, which confirms that

15  exculpatory contracts are unenforceable.

16          **EMPLOYER ATTEMPTS TO AVOID LABOR LAWS ARE INEFFECTIVE**

17          11)  Under the above-mentioned principles applied by the

18  U.S. Supreme court in Alamo and the California Supreme Court in

19  Borello, the parties' claims, recitations and documents do not

20  control application of the labor laws.  Allowing employees or

21  employers to disavow labor law protections would effectively make

22  minimum wage and other labor laws optional to the employer, not

23  mandatory, which is not the law.  The labor laws protect the

24  weaker employee from being exploited by the stronger employer and

25  against the "evils of overwork".  See e.g. Gentry v. Superior

26  Court (Circuit City Stores, Inc.) (2007) 42 Cal.4th 443 at 445-6.

27  The public policy of protecting employees from overbearing

28  employers is particularly applicable where the worker is

7

PLAINTIFF'S FIRST AMENDED COMPLAINT

1  dependant upon the job for a living.  Plaintiff in this case was

2  dependant upon her work and labor for Defendant, and Defendant

3  controlled the work, which satisfies the "economic reality test"

4  and the alternative "control" test of employment.  As explained

5  in Real v. Driscoll Strawberry Associates, Inc. 603 F.2d 748, 754

6  (9th Cir 1979):  "Courts have adopted an expansive interpretation

7  of the definitions of "employer" and "employee" under the FLSA,

8  in order to effectuate the broad remedial purposes of the Act…The

9  common law concepts of "employee" and "independent contractor"

10  are not conclusive determinants of the FLSA's coverage.  Rather,

11  in the application of social legislation employees are those who

12  as a matter of economic reality are dependent upon the business

13  to which they render service." (Emphasis in original)

14      12)  Plaintiff Laura D. worked for the Scientology

15  enterprise, namely Defendant CSI, at below minimum wage

16  compensation from 1991 to 2004.  Generally, Plaintiff was an

17  office worker when not in the RPF for punishment and control

18  reasons.  For the most part, Plaintiff's work for CSI was

19  clerical and secular in nature.  While technically irrelevant to

20  the test of employment for the protection of the labor laws (See

21  e.g. Alamo and Borello), Plaintiff was not a nun, monk, priest,

22  minister or in a similar occupation as Scientology's "PR" machine

23  or lawyers may suggest.  If Scientology has a comprehensive

24  "Bible", or an equivalent, Plaintiff never saw it, studied it or

25  preached about it.  When not being punished in the RPF, Plaintiff

26  was usually performing mundane office work under abnormal,

27  bizarre and illegal conditions.

28

PLAINTIFF'S FIRST AMENDED COMPLAINT

1     13)  Defendant CSI, related Scientology entities, and

2 potential Doe Defendants claim that workers such as Plaintiff are

3 not entitled to the benefits and protections of the labor laws.

4 The weight of authority is contrary to Defendant's self-granted

5 immunity from state and federal labor laws.  As stated by the

6 California Supreme Court, "… [To] permit religious beliefs to

7 excuse acts contrary to law… would be to make professed doctrines

8 of religious belief superior to the law of the land, and in

9 effect to permit every citizen to become a law unto himself."

10 Catholic Charities of Sacramento, Inc. v. Superior Court (2004)

11 32 Cal.4th 527, 541 (Citing the U.S. Supreme Court).

12 Historically, the Scientology enterprise has considered itself

13 just as described by the court – a law unto itself.

14     **FURTHER SUPPORT SHOWING THAT PLAINTIFF WAS AN EMPLOYEE**

15     14)  Scientology documents refer to its workers as

16 employees.  For example, Scientology's own website,

17 www.Scientologytoday.org, has a somewhat fanciful description of

18 the Sea Org, and notes that the "Sea Org" is not the employer,

19 however it is also acknowledged that workers sign employment

20 contracts with the "church" that employs them.  In this case,

21 Defendant CSI, not the Sea Org, is the employer.  Scientology's

22 website has the following admission that its workers are, of

23 course, "employees", and that the church, in this case Defendant

24 CSI, employs persons and makes them sign "employment contracts".

25 While these employment contracts are not necessarily "legally

26 binding", Scientology's website claims its workers sign "legally

27 binding" employment contracts.  The website states:

28

PLAINTIFF'S FIRST AMENDED COMPLAINT

64

1      "…All advanced churches and management-echelon

2      church organizations <u>employ</u> only members of

3      the Sea Organization religious order. <u>While</u>

4      <u>such members sign legally binding employment</u>

5      <u>contracts</u> and are responsible to the directors

6      and officers of the church where they are

7      employed…"

8      (www.scientologytoday.org/corp/ministry2.htm)

9     15)   In 1993, CSI knew that it employed employees, not

10 volunteers.  One of CSI's own publications defines "employee" as

11 follows:

12     "Legally, an employee is defined as someone

13     who performs a service where the employer

14     can control what will be done and how it

15     will be done…" (Tax Compliance Manual

16     Published by Church of Scientology

17     International for use by Churches and

18     Missions of Scientology, 1993)

19    16)   This definition of employee in CSI's tax compliance

20 manual focuses on "control" of the employee, and his or her work,

21 as does the definition of "employer" used by the pertinent state

22 agency.  The California Division of Labor Standards Enforcement

23 publishes a manual that is available to the public.  With respect

24 to employment, on page 21 of the <u>Enforcement Policies and</u>

25 <u>Interpretation Manual</u> of the state agency responsible for

26 enforcing the California labor laws, "employer" is defined as

27 follows:

28

10

PLAINTIFF'S FIRST AMENDED COMPLAINT

1    "Employer", Defined: The definition of employer for

2    purposes of California's labor laws, is set forth in

3    the Wage Orders promulgated by the Industrial Welfare

4    Commission at Section 2 (see Section 55.2.1.2 of this

5    Manual), and reads in relevant part as follows:

6         "Employer" means any person . . . who

7         directly or indirectly, or through an agent

8         or any other person, employs or exercises

9         control over the wages, hours, or working

10        conditions of any person. (See e.g., 8 CCR

11        §11090(2)(F))"

12   In section 2.1, this manual defines the term "employee" as

13   follows:  "Generally, the term means any person employed by an

14   employer."

15        17)  Defendant CSI was required by law to post various

16   notices concerning wages, hours and working conditions.  For

17   example, Industrial Welfare Commission Order 4-2001 applies to

18   clerical employees such as Plaintiff.  Under <u>2. Definitions</u> it

19   defines "employ", "employee" and "employer" as follow:

20        a)   "Employ" means to engage, suffer, or

21             permit to work.

22        b)   "Employee" means any person employed by an

23             employer.

24        c)   "Employer" means any person as defined in

25             Section 18 of the Labor Code, who directly

26             or indirectly, or through an agent or any

27             other person, employs <u>or exercises control</u>

28             <u>over the wages, hours, or working</u>

11

PLAINTIFF'S FIRST AMENDED COMPLAINT

66

1    <u>conditions of any person</u>.    (Emphasis

2    added)

3    2)    This definition of "employer" in California labor law

4    is restated in the Division of Labor Standards Enforcement

5    Manual, Page 2-1 citing 8 CCR §11090(d)(7).

6    **LABOR CODE VIOLATIONS ARE ACTIONABLE**

7    **AS UNFAIR BUSINESS PRACTICES**

8    18)    This case addresses labor code violations, and other

9    improper, illegal and unfair business practices, in a second

10    cause of action brought under <u>Business and Professions Code</u>

11    §17200.    The operative statute underlying the second cause of

12    action may be triggered by essentially all business torts and

13    statutory violations, including violations of federal law, which

14    are independently actionable under the California body of law on

15    unfair competition and business practices.    The California

16    Supreme Court has expressly ruled that labor code violations are

17    actionable under this law.    The difference between what was paid

18    as wages and what should have been paid under minimum wage and

19    overtime laws qualifies as restitution damages under B&P Code

20    §17203. <u>Cortez v. Purolator Air Filtration Products Co.</u> (2000) 23

21    Cal.4th 163, 177-179.

22    19)    This case has been brought within the applicable

23    limitation periods for a B&P Code §17200 action, for rescission

24    of unlawful contracts, tort claims and for other claims herein,

25    (Case timely filed after discovery of claims.  See, e.g. <u>Broberg</u>

26    <u>v. The Guardian Life Ins. Co. of America</u> (3/2/09 __Cal App 4[th]__

27    (B199461)) and the five year period for human trafficking

28    actions.    With respect to setting aside bogus agreements and

12

PLAINTIFF'S FIRST AMENDED COMPLAINT

1   waivers, it is also timely.  See CCP §337 & 338.  To the extent
2   Defendant may attempt to use statute of limitation arguments to
3   limit damages or attack certain aspects of this case, Defendant
4   should be estopped.  Defendant's deceitful and atrocious conduct
5   should operate to equitably toll any statute of limitations and
6   equitably estopp Defendant from using time bars to escape
7   liability for an ongoing course of illegal and coercive conduct.
8   Defendant's treatment of those who labor for the Scientology
9   enterprise has been and continues to be offensive to law, public
10  policy and inalienable rights guaranteed to Plaintiff and others
11  by Article 1 Section 1 of the California Constitution.

12       20)  Plaintiff does not have copies of any instruments such
13  as purported releases, non-contracts, waivers and similar
14  documents forced upon her and other employees.  Plaintiff does
15  not recall the details of what she signed.  Although the
16  Scientology enterprise, and Defendant CSI, expends great effort
17  in creating a self-serving "paper" defense, the statutory right
18  to receive legal pay embodied in Section 1194 is unwaivable as
19  stated by the California Supreme Court in Gentry v. Superior
20  Court (2007)42 Cal. App. 4th 443 at 456.  See also, Labor Code
21  §1194 & 206.5 and Borello cited above.  The U.S. Supreme Court
22  has held that the protections of the federal labor laws cannot be
23  abridged or waived.  See e.g. Barrentine v. Arkansas-Best Freight
24  System, (1981) 450 U.S. 728, 740.  In addition to statutory
25  restrictions on waivers and agreements contrary to public policy,
26  any purported written waiver of employment rights or wages
27  legally due would not be enforceable on numerous other grounds
28  including duress, menace, illegality and lack of consideration.

13

PLAINTIFF'S FIRST AMENDED COMPLAINT

1  Under controlling laws, Defendant had a non-waivable duty to
2  comply with wage and minor labor laws.  Defendant breached said
3  duty.  While Plaintiff made no voluntary or effective waiver of
4  pertinent rights, any such waiver, contract or concession would
5  be improper on numerous grounds supported by the Labor Code
6  §1194, the Civil Code and common law.  See e.g. Gentry v.
7  Superior Court (2006)135 Cal. App. 4th 944 and Civil Code §1668
8  (Exculpatory documents ineffective as a matter of law).

9     21)  The core facts are not subject to serious dispute.
10 Plaintiff was employed by Defendant CSI.  AS an employee
11 Plaintiff was, and is, entitled to the full protection of state
12 and federal labor laws.  As a citizen who worked in the State of
13 California, Plaintiff is entitled to the protection of state law
14 and the inalienable rights guaranteed by the California
15 Constitution.  Defendant CSI violated numerous duties owed to
16 Plaintiff as an employee, and as a person with basic human
17 rights, including the right not to be subjected to forced labor,
18 human trafficking and common law torts.

19                **DEFENDANT USES ECONOMIC COERCION**
20              **AND THREATS OF ABUSIVE LEGAL ACTION**

21     22)  First there is recruitment, and the representations
22 made to recruit the prospective victim, which in this case was a
23 young girl.  Then there is the billion year "Contract of
24 Employment" followed by the initial training and indoctrination
25 for the job.  There are many pieces of paper generated along the
26 way.  The Scientology enterprise documents its self-interest.
27 (Hubbard said that if it is not written it is not true.)  This
28 section addresses two particular types of documents forced upon

                            14

1 employees. These documents forced upon Plaintiff and other

2 employees were tools of improper economic and legal coercion.

3     23) As an employee of Defendant CSI, Plaintiff was required

4 to take certain Hubbard training courses and submit to what is

5 referred to as "processing". Plaintiff could not refuse these

6 "services". Scientology courses are supposedly part of the

7 compensation package, however employees are seldom given their

8 choice of courses. Employees are required to take certain

9 courses and undergo "processing" as a condition of the job. The

10 courses are given a price tag way above market value and the

11 employee is told, and is typically required to sign documents

12 that recite, that the employee will be required to pay for the

13 course or training at the hypothetical listed value if the

14 employee breaks his or her contract of employment with the

15 Scientology enterprise involved.

16     24) As a threshold matter, this evidences that Scientology

17 takes the position that its workers have enforceable contracts of

18 employment, at least when it comes to Scientology asserting it

19 purported "contractual" rights over employees. This practice

20 constitutes a violation of labor laws and threatened abuse of the

21 legal process under the human trafficking laws. This practice

22 puts the employee in debt to the employer, which is an indicator

23 of human trafficking under California statutes. To the extent

24 Scientology courses are arguably part of the promised

25 compensation package, it would be illegal for employers to demand

26 a return of any compensation or employee benefits (Labor Code

27 §221). To the extent the courses were services sold by Defendant

28 CSI to Plaintiff, it is illegal for the employer to require that

1   an employee patronize the employer or purchase its services

2   (Labor Code §450(a)).

3       25)   The supposed debt for purported Scientology training

4   and services is called Freeloader Debt.  Defendant CSI uses the

5   threat of Freeloader Debt as economic coercion to keep employees

6   working under harsh and illegal working conditions.  Employees

7   are lead to believe and reminded that if they quit working for

8   Scientology, in this case Defendant CSI, they will owe and be

9   required to pay a substantial debt.  When you have been working

10  for 50¢ per hour, have little formal education and no employment

11  history outside of Scientology, as was Plaintiff's situation, a

12  typical Freeloader Debt of $80,000 - $120,000 is staggering and

13  very intimidating.  Also, if you do not pay this Freeloader Debt,

14  you can be declared an enemy of the church and "disconnected"

15  from friends and family.  The Freeloader Debt practice is

16  illegal, intimidating and coercive to employees such as

17  Plaintiff.

18      26)   In addition to the threat of Freeloader Debt collection

19  and related adverse consequences, Scientology makes its employees

20  sign gag papers that have purported "liquidated damage" clauses.

21  Defendant CSI uses the threat of the legal process to coerce,

22  intimidate and mislead present and past employees.  The right of

23  free speech is an unalienable right not so easily lost.  Further,

24  employers are prohibited by California law from attempting to

25  silence workers regarding working conditions or pay.  (Labor Code

26  §232 & 232(b))  Penalty provisions such as $50,000 for each

27  mention of Scientology working conditions are unlawful and

28  unenforceable as a matter of law, yet Defendant uses such clearly

16

PLAINTIFF'S FIRST AMENDED COMPLAINT

71

1    improper and unlawful employment terms to coerce, manipulate,

2    deceive and silence employees.

3                              **DISCUSSION**

4        27)   Plaintiff worked long hours including 100+ hour weeks

5    at below minimum wage, no compensation for overtime and

6    insufficient time off.  The work week was seven days not six as

7    required by law.  In the course of, and by reason of her

8    employment with Defendant, Plaintiff was coerced into having an

9    abortion at the age of seventeen.  She was still a minor.

10   Plaintiff was coerced into having an abortion to keep her job

11   with Defendant.  Plaintiff is informed and believes that

12   Defendant continue to ignore labor laws and coerce pregnant

13   workers into forced abortions.

14       28)   Plaintiff was dependant upon Defendant for sustenance,

15   spending money and income.  Plaintiff was not a part-time

16   volunteer who had other work and could come and go as she

17   pleased.  Plaintiff had a rigid work schedule.  Plaintiff's work

18   activities were strictly controlled by Defendant CSI.  Plaintiff

19   was not allowed to have other employment or source of income.

20   When married, Plaintiff and her then husband got in trouble for

21   using his mother's car during the brief periods allowed for

22   cleaning living quarters and washing clothes.  Plaintiff's

23   "compensation" was affected by production.  In Scientology-speak,

24   the worker's lives revolve around "stats".  If "stats" are up,

25   one has survived another dreary week. If "stats" are down, things

26   get ugly.

27       29)   Plaintiff was required to wear a uniform at work and

28   could have her pay docked if she did not take proper care of her

                                  17

1   work uniform.  Plaintiff was confined to her place of employment
2   if she did not have an approved reason, such as a post-abortion
3   doctor's appointment, to leave.  Generally, Plaintiff needed
4   someone's permission to take time off or attend to personal
5   matters.  For example, Plaintiff needed written permission signed
6   off by several supervisors to see her doctor after an abortion.
7        30)  In addition to fraudulent concealment of rights and
8   legal claims, and estoppel to plead statute of limitation
9   defenses, a related justification for tolling the statue of
10  limitation provisions is Defendant's practice of failing to give
11  employees notice of their rights as is required by law.
12  Scientology does not post mandated Wage Orders in the workplace.
13  Defendant failed to give required notices of labor rights and
14  demanded bogus waivers and instruments for the purpose of evading
15  law and avoiding payment of even minimum wage to its workforce.
16  Defendant not only fails to give proper notice, it gives a false
17  notice of no rights.  The documents forced upon employees are
18  part of a misinformation program designed to prevent employees
19  from seeking what is their legal pay.  Further, the directives of
20  the employer's founder, L. Ron Hubbard, are replete with
21  instructions to use litigation to harass, attack never defend,
22  and disregard the truth for the "higher cause" of Scientology.
23  According to a Hubbard dictum of universal truth, the way to
24  control people is to lie to them.  Defendant uses lies,
25  punishment, coercion and fear to control its employees.
26  Perceived enemies of Scientology are declared "Suppressive
27  Persons" and may be harassed and attacked by the Scientology
28  enterprise.  Many former employees are scared and intimidated

18

PLAINTIFF'S FIRST AMENDED COMPLAINT

73

1  into silence and submission.  For these reasons and others,

2  Defendant should be estopped from using a statue of limitation

3  defense to avoid or limit damages.

4  **LAURA DeCRESCENZO'S SCIENTOLOGY STORY**

5       31)  Plaintiff was recruited into employment with the

6  Scientology enterprise at an early age.  The recruiting started

7  when Plaintiff was <u>nine years old</u>.  At age twelve, Plaintiff

8  signed a "Contract of Employment" with the Scientology

9  enterprise.  Of course, as a minor she was incompetent to enter

10  into an employment contract.  Plaintiff was not allowed to have a

11  copy of the document she signed.

12       32)  At age twelve, Plaintiff was required by law to attend

13  school (a real school with real hours, a teacher and an

14  appropriate curriculum) and barred from most types of labor or

15  employment.  Compulsory education and child labor laws did not

16  deter Scientology from trying to pressure Plaintiff into dropping

17  out of school, moving across state lines and going to work for

18  CSI at the immature age of twelve.  CSI stole Plaintiff's youth

19  and that of many others.

20       33)  Plaintiff knew before joining the Scientology work

21  force that she wanted to have children and raise a family of her

22  own.  Plaintiff wanted and reasonable expected a somewhat normal

23  life while working for the Scientology enterprise.  During the

24  recruitment phase, Plaintiff was told she could run away and join

25  the circus (figuratively speaking), have children, get an

26  education, visit her parents back in New Mexico and get free

27  Scientology.  To a young girl with the normal maturity of a

28  twelve year old, this was an attractive sales pitch.  But it was

74

1   not true.  Life as a Scientology employee was much different than
2   what was sold to Plaintiff in the recruitment phase of her
3   misadventure.

4       34)  Once in, it was all work and little else.  Plaintiff
5   discovered she had almost no personal freedom.  Planned visits to
6   family were restricted, delayed and cut short.  She was 12 - 13
7   years old and not allowed unrestricted access to her parents.
8   She could not visit her parents without special permission and
9   being "sec checked".  She would be "sec checked" again upon her
10   return.  Sec-checking was mandatory and is described in some
11   detail in the cause of action for intentional infliction of
12   emotional distress.

13       35)  While employed by CSI, Plaintiff was on occasion
14   assigned to work in the Rehabilitation Project Force ("RPF").
15   Work on the RPF is designed to control, coerce, punish, inflict
16   emotional distress and break the will of the victim.  The working
17   conditions are severely harsh.  Personal liberty is non-existent.
18   Plaintiff worked on the RPF for over two years, which caused her
19   significant emotional distress.

20       36)  Plaintiff eventually decided to leave but needed an
21   escape plan.  The Scientology enterprise, including Defendant
22   CSI, uses various techniques to keep workers on the job and
23   providing cheap labor.  Plaintiff knew of various enforcement
24   procedures and knew she had to find a creative way out.
25   Plaintiff also knew that the Scientology enterprise, including
26   Defendant CSI, was somewhat paranoid about workers dying or
27   committing suicide at one of Scientology's main bases.  (A death
28   may cause an inconvenient investigation.)  Therefore, to escape,

20

PLAINTIFF'S FIRST AMENDED COMPLAINT

1   Plaintiff swallowed bleach while being sure this was witnessed.

2   Plaintiff was distraught and desperate to get out.  She exhibited

3   suicidal tendencies and was dubbed a security risk.  Plaintiff

4   had found a way out; however, she was still forced to leave on

5   the employer's terms.

6       37)  After being deemed a suicide risk for swallowing

7   bleach, Plaintiff was brought into a room to sign her "exit"

8   papers.  Plaintiff was under extreme duress and just wanted to

9   get out without having to undergo hours or days of emotional

10  abuse.  There was no negotiation over her escape papers.  She was

11  required to sign various papers before being allowed to leave the

12  room.  Plaintiff signed the papers to get out and was not given

13  copies.  Plaintiff did not fully understand the papers, or the

14  process, except that it had to be endured if she wanted out.

15  Plaintiff had to sign the papers to leave the room and get out.

16  Plaintiff partially recalls some of the content.  The papers

17  contained a list of her "crimes" and confidential matters

18  revealed in the "sec checking" procedure described above.  There

19  were recitations about how great Scientology was and how bad she

20  was, and various terms about not disclosing the working

21  conditions at CSI and not suing Scientology for its wrongs.

22  Plaintiff did not freely consent to the unconscionable and

23  unlawful terms of her termination papers.  These documents were

24  signed by Plaintiff under duress, mistake of fact and law, and

25  under improper conditions and coercion.

26      38)  Plaintiff submits that this exit process is in itself

27  illegal and improper.  It is a coerced procedure and involves

28  elements of fraud, deceit and undue influence.  The resulting

21

PLAINTIFF'S FIRST AMENDED COMPLAINT

76

1  papers cannot exculpate Scientology form violations of the labor
2  laws.  (Authorities cited elsewhere.)  The papers purport to
3  waive rights that cannot be so waived, and are believed to
4  include liquidated penalty provisions that are void as against
5  public policy.  This heavy-handed and deceitful "exit" procedure
6  serves to extend the stature of limitations for actions that do
7  not accrue until discovery of the action, such as this case, and
8  constitutes fraudulent concealment of rights sufficient to
9  equitably estopp Defendant from hiding behind statutes of
10 limitation defenses.

11     39)  During her "exit interview" process, it was falsely
12 misrepresented to Plaintiff, expressly or implicitly, that she
13 had no claims or rights, had no recourse against CSI and others,
14 and that she owed CSI approximately $120,000 for her on-the-job
15 training since age twelve.  (That is the "Freeloader Debt"
16 described above.)  Plaintiff had been taking orders from
17 Defendant since age twelve and was under the undue influence of
18 Defendant CSI and its agents.  Plaintiff had little formal
19 education or sophistication as she had been effectively isolated
20 from mainstream society and culture.  Initially, Plaintiff
21 attempted to pay off the alleged "debt" to an employer who had
22 underpaid her for years.  Plaintiff paid approximately $10,000 on
23 an unenforceable "Debt" for training and courses that was
24 required by her then employer, Defendant CSI, and was related to
25 her job performance.  Plaintiff seeks restitution of payments
26 made on this illegal and improper claim.
27     40)  Plaintiff was not given copies of the papers she was
28 pressured to sign at the beginning, during and end of her

22

PLAINTIFF'S FIRST AMENDED COMPLAINT

1 | employment with CSI.  Plaintiff is informed and believes that the

2 | papers she was required to sign, and in particular the exit

3 | documents, are part of a standard operating procedure used by CSI

4 | and the Scientology enterprise as an ongoing fraud as against its

5 | former victims including Plaintiff herein.  Much effort is made

6 | to convince the departing employee that the waivers, releases,

7 | confidentiality agreements and penalty clauses are legal.

8 | Examples of termination papers are posted on the Internet.

9 | Presumably Plaintiff was pressured and coerced to sign similar

10 | papers to make her escape.  Examples of Scientology termination

11 | papers on the net recite that former employees must not disclose

12 | the working conditions or pay within Scientology, which is a

13 | violation of the Labor Code, and that workers will pay "damages"

14 | of $20,000, $50,000 or more if they exercise their rights of free

15 | speech and rights under the Labor Code.  These illegal and

16 | unenforceable papers intimidate many ex-Scientology employees

17 | into silence.  Ex-Scientologists know of Hubbard's dictum that

18 | the purpose of a lawsuit is to harass and destroy, not to win on

19 | the merits.  Former staff members and others fear being sued into

20 | financial ruin by Scientology.  The church has a reputation to

21 | live up to.  See, e.g. Church of Scientology of Calif. v.

22 | Wollersheim (1996) 42 Cal.App.4th 628 (Scientology has sued

23 | lawyers, witnesses, judges and the entire Los Angeles Superior

24 | Court with respect to a case of emotional distress.  See also the

25 | underlying case at Wollersheim v. Church of Scientology (1989)

26 | 212 Cal.App.3d 872)

27 | 41)  Part of Defendant's sales pitch used to lure potential

28 | employees such as Plaintiff is the representation that one of the

23

PLAINTIFF'S FIRST AMENDED COMPLAINT

1 perks of the job is Scientology "advancement". This is basically
2 not true for most and was not true for Plaintiff. In practice,
3 employees, such as Plaintiff, are not allowed to advance very far
4 up the scale. Most are stuck at about where they started for
5 years. Seldom is any significant advancement into Scientology
6 obtainable by employees such as Plaintiff. The higher level
7 teachings of Scientology, including L. Ron Hubbard's Xenu story
8 (the "Genesis" of Scientology), confidential levels and "Advanced
9 Technologies" are unknown to most Scientologists and CSI
10 employees. The cost of "graduating" to the level of the Xenu
11 story is reportedly $350,000 and up.

12    42)  Plaintiff worked for the "Mother Church", CSI, for
13 thirteen years and had to leave and conduct research on the
14 internet to find out what the "religion" of Scientology is all
15 about. If Scientology has a comprehensive "Bible" or other
16 similar materials, they did not give it to Plaintiff.
17 Ironically, most of Scientology dogma is so secret they do not
18 even disclose it to Scientologists. Yet, Defendant CSI suggests,
19 when convenient and self-serving, that employees spend their
20 spare time in religious study, endeavors and contemplation. They
21 are known to suggest that all of their employees are "ministers",
22 although these "ministers" work full time in commercial jobs and
23 know relatively little of the religion they supposedly
24 "minister". At times, Defendant CSI suggests that it has zero
25 employees. That is not true. Defendant CSI has many employees
26 and Plaintiff was one of them. At times herein material,
27 Plaintiff was an employee working a secular job in a commercial
28 enterprise for illegal wages. Whether or not the "church" was

24

1  also a religious enterprise is irrelevant.  As recognized by

2  courts in cases such as Alamo, supra, concepts of "religion",

3  "non-profit" and "commercial" are not mutually exclusive.  Even a

4  church must pay its employees minimum wage.  The only possible

5  exception under law would be the "minister" exception, which does

6  not apply to these facts and has not been found applicable under

7  California law to ministers on the minimum wage issue.  See e.g.

8  Catholic Charities of Sacramento, Inc. v. Superior Court (2004)

9  32 Cal.4th 527, 544 and Hope International University v. Superior

10 Court (2004)119 Cal.App.4th 719.  Further, the U.S. Supreme Court

11 has not addressed or endorsed the "minister" exception.  Any such

12 "minister" exception would, at most, apply on a case by case

13 basis to persons performing the duties commonly understood to be

14 the job of a "minister".  Any such minister exception could not

15 be applied en masse to literally all of Defendant's employees.

16 Also, the minister exception is limited to ministers and

17 religious disputes.  It does not give a purported religion

18 blanket immunity for torts and illegal contract.  See also, Equal

19 Employment Opportunity Commission v. Fremont Christian School

20 (9th Cir 1986) 781 F.2d 1362 and Gunn v. Mariners Church, Inc.

21 (2008)167 Cal.App.4th 206, 214.  The Alamo and Catholic Charities

22 cases cited herein are the highest authorities on point.  Under

23 Alamo, Catholic Charities and numerous cases, some of which are

24 cited herein, the labor laws apply to Plaintiff and these facts.

25      43)  In 1996, while working for CSI, Plaintiff became

26 pregnant.  She was seventeen at the time, a minor.  Having

27 children was against the dictates of top management at

28 Scientology.  At age seventeen, Plaintiff had only her job at CSI

25

PLAINTIFF'S FIRST AMENDED COMPLAINT

80

1  and was dependant upon CSI for support.  Plaintiff had been

2  working for far less than minimum wage.  She didn't have money, a

3  car, a place to call her own, or medical insurance or coverage.

4  Plaintiff felt trapped and without viable options.  She had an

5  abortion to keep her position at CSI and not risk the adverse

6  consequence of having her baby.  It should not matter, but forced

7  abortions were business practices not "religious" rituals. .

8      44)  Plaintiff seeks damages for herself and to make a

9  point. The point being that CSI and other Scientology corporate

10  shells must obey the law - including the labor laws.  The goals

11  of this case include stopping the practice of ordering female

12  employees to have abortions, stopping the practice of oppressive

13  child labor and clearing the path for workers of Scientology

14  organizations to obtain the compensation due them under state and

15  federal labor laws.  Plaintiff seeks payment for her work at

16  minimum wage, overtime pay and other remedies authorized by law.

17      45)  Plaintiff was a "born in" Scientologist.  That is the

18  phrase typically used to describe those whose parents were

19  Scientologists and who were recruited and indoctrinated at a

20  young age through no fault or decision of their own.  Plaintiff

21  and many of her fellow employees started when they were minors.

22  Plaintiff did not freely, knowingly and competently sign away her

23  rights at age twelve, or at any time thereafter.

24      46)  Plaintiff's maiden name is Laura A. Dieckman.

25  Plaintiff uses her maiden name for most purposes; however,

26  Plaintiff's current legal name is Laura Ann DeCrescenzo, which

27  name is the product of a dissolved marriage.  Plaintiff is

28

81

1  referred to hereinafter as "Laura D." or simply "Plaintiff".

2  Plaintiff is currently a resident of New Mexico.

3      47)  Defendant Church of Scientology International (CSI)

4  represents itself to be the "Mother Church" of Scientology.  CSI

5  has its principal office and apparent headquarters in Los

6  Angeles, California.  The County of Los Angeles is an appropriate

7  venue for this action.

8      48)  Religious Technology Center (hereinafter "RTC")

9  purports to be a California non-profit corporation.  RTC's role

10  in the corporate shell game of the Scientology enterprise is to

11  police access and use of L. Ron Hubbard's works.  RTC supposedly

12  protects copyrighted material and trademarks.  RTC charges fees

13  for protection of intellectual property rights and is therefore

14  inherently a commercial enterprise.  Plaintiff was not employed

15  by RTC; however, Plaintiff's counsel has learned since filing the

16  initial Complaint in this action that one or more top RTC

17  executives were actively involved in drafting and using bogus

18  forms, waivers and purported contracts to "scare" and intimidate

19  employees such as Plaintiff herein, although they and RTC knew

20  that said forms and waivers were unenforceable and contrary to

21  law.  Among other things, having employees sign unlawful

22  documents is a violation of Labor Code §432.5 and constitutes a

23  misdemeanor.

24      49)  At times herein material, and continuing, Defendant CSI

25  and unnamed entities within the Scientology enterprise including

26  Doe Defendants were and are enterprises conducting business, and

27  employers paying employees to conduct said business, within the

28  State of California and in interstate commerce.  Accordingly,

27

PLAINTIFF'S FIRST AMENDED COMPLAINT

82

1  said Defendant is subject to California and Federal laws

2  concerning its work force, working conditions, business

3  practices, minimum wage, payment for overtime and the protection

4  of minors.  As alleged in more detail herein, Defendant has

5  systematically ignored and violated said laws to the damage of

6  Plaintiff Laura D. and others similarly situated.

7  **FIRST CAUSE OF ACTION FOR RESCISSION**

8  **OF UNLAWFUL/FRAUDULENT INSTRUMENTS**

9       50)  Plaintiff realleges and incorporates the above

10  paragraphs in their entirety and the allegations below, and in

11  particular the Seventh Cause of Action for Fraud.

12       51)  Plaintiff alleges that Defendant CSI, individually and

13  in concert with other members of the Scientology enterprise, and

14  their agents, mislead, deceived and/or coerced Plaintiff into

15  signing various purported admissions, acknowledgments, waivers,

16  releases, confidentiality agreements and employment contracts

17  during the course of Plaintiff's employment and termination of

18  said employment.  High ranking executives of Defendants CSI and

19  RTC were primarily responsible for drafting portions of the

20  unlawful documents reportedly because CSI and RTC knew the

21  documents would be unlawful and unenforceable, and the lawyers

22  would only get in the way.  Defendant CSI was on notice that

23  certain form agreements would not stand up in court, would be

24  unenforceable and were otherwise improper.  Although CSI and RTC

25  knew various waivers and purported employment contracts were

26  unlawful, the management of CSI and RTC decided to use the

27  documents, force them upon employees and use the form

28  "agreements" to intimidate, deceive and coerce employees.  The

28

PLAINTIFF'S FIRST AMENDED COMPLAINT

83

1  use of unlawful waivers and such to deceive employees is

2  fraudulent and a violation of Labor Code §432.5.

3      52)  Plaintiff was not allowed to have copies of the

4  documents Defendant CSI and its co-conspirators coerced and

5  pressured her into signing and therefore cannot attach hereto as

6  Exhibits the specific documents in question to be rescinded,

7  negated and confirmed null and void pursuant to this cause of

8  action.

9      53)  Plaintiff is informed and believes that said documents

10 are unlawful, unconscionable and otherwise properly the subject

11 of this cause for rescission and/or cancellation.

12     54)  Plaintiff is informed and alleges that said documents

13 purport to waive Plaintiff's entitlement to the protection of

14 State and Federal laws including her right to be paid minimum

15 wage and overtime for her labors for Defendant CSI.  The right to

16 minimum wage and overtime is not waivable as a matter of law.

17 Further, any such purported waiver of labor law protections would

18 be unlawful and ineffective.  See e.g. Labor Code §§206.5, 1194,

19 Civil Code §3513 and <u>Gentry v. Superior Court</u> (2007) 42 Cal. App.

20 4th 443, 456.  Further, Plaintiff has certain inalienable rights

21 under the California Constitution that could not be and would not

22 be waived by the documents in question.

23     55)  Plaintiff is informed and alleges that said documents

24 purport to exculpate Defendant and its agents from wrongful,

25 unlawful and illegal conduct in violation of Civil Code Sections

26 1667 and 1668.  Civil Code §1668 states as follows:

27         "All contracts which have for their object,

28         directly or indirectly, to exempt any one from

                              29

1   responsibility for his own fraud, or willful

2   injury to the person or property of another, or

3   violation of law, whether willful or negligent,

4   are against the policy of the law."

5   56)  In addition to purportedly waiving rights that cannot

6   be waived, Plaintiff is informed and alleges that said documents

7   were executed under a lack of proper and freely given consent

8   (Civil Code 1565-8), and are unconscionable, unenforceable and

9   otherwise invalid and subject to rescission and/or cancellation

10  by reason of duress, menace, fraud, undue influence, mistake and

11  being unlawful (See Civil Code §§1569-1580).  Further,

12  unconscionable terms are unenforceable as a matter of law (See

13  Civil Code §1670.5) and having employees execute unlawful

14  documents is a further violation of the labor laws (See, e.g.

15  Labor Code §432.5).

16  57)  Plaintiff is therefore legally entitled to rescind

17  and/or cancel any and all purported documents signed by her

18  during the course of and at the termination of her employment

19  with Defendant CSI by reason of the fact that said documents

20  purport to waive rights that cannot be waived and were otherwise

21  executed under improper circumstances.

22  58)  An action based upon rescission of an instrument in

23  writing may be commenced within four years of discovery of the

24  grounds for rescission such as fraud or mistake tainting any such

25  improper and invalid term or contract.  Plaintiff brings this

26  action based upon rescission within four years of discovery of

27  the grounds.  The action is therefore timely under CCP §337(3).

28

30

PLAINTIFF'S FIRST AMENDED COMPLAINT

59)   Plaintiff therefore seeks rescission and cancellation of all documents in which she, directly or indirectly, expressly or implicitly, essentially and in effect, purported to waive her rights and claims under the labor and human trafficking laws, to free speech and other inalienable rights under the California Constitution.

## SECOND CAUSE OF ACTION FOR VIOLATION
## OF B&P CODE §17200 ET. SEQ

60)   Plaintiff realleges and incorporates the above paragraphs in their entirety and the allegations below in the Third and Fourth Causes of Action.

61)   Defendant has engaged in an improper and illegal course of conduct to coerce the performance of abundant cheap labor and evade labor laws with respect to its employees, including Plaintiff herein.  Defendant CSI engaged in unlawful, unfair and fraudulent business practices to the damage of Plaintiff and others.  Defendant CSI's improper activities include, but are not limited to:

       a)   failure to pay minimum wage;

       b)   failure to pay overtime;

       c)   failure to post Wage Orders and similar items;

       d)   failure to give proper breaks, rest periods and days off;

       e)   depriving minors of required education;

       f)   working minor employees illegal hours at illegal tasks;

31

PLAINTIFF'S FIRST AMENDED COMPLAINT

g)   not paying full wages due within 72 hours of
     termination (In Plaintiff's case that would be
     several years of wages earned but not paid.);

h)   demanding releases for wages due or to become due in
     violation of the Labor Code;

i)   refusing employees access to their files;

j)   coercing workers to sign instruments that
     purportedly govern employment rights upon demand and
     refusing to give workers copies of required
     documents;

k)   Subjecting Plaintiff to the Rehabilitation Project
     Force ("RPF"). Plaintiff was subjected to
     incredible physical and emotional abuse while
     working in the RPF for over two years;

l)   using the threat of debt to coerce employees;

m)   Upon termination of employment, CSI claimed that
     Plaintiff breached various covenants of employment
     and owed CSI approximately $120,000 for purported
     training or "services" purchased while working for
     CSI. The demand for payment for purported training
     was a further attempt to pay less than legal wages
     for labor performed, an unconscionable and
     unenforceable claim, a threat used to intimidate and
     coerce employees into continuation of working under
     unlawful conditions, and an illegal demand that an
     employee pay back compensation or employee benefits.
     See e.g. Labor Code §200, 221 and 450(a). The use
     of the "Freeloader Debt" to force workers into the

32

PLAINTIFF'S FIRST AMENDED COMPLAINT

87

performance of labor for Defendant is one of the
threats and coercive tactics used by Defendant to
insure a continuation of forced labor from Plaintiff
and other employees.  Further, Plaintiff paid over
$10,000 on her "Freeloader Debt", which is sought
herein as additional restitution damages;

n)   Defendant CSI coerced Plaintiff into having an
abortion when she was still a minor.  Plaintiff was
required to have an abortion to keep her employment
and avoid adverse consequences in her employment;

o)   Requiring that employees submit to interrogation on
a primitive lie detector type device called an e-
meter in violation of state and federal laws
prohibiting mandatory use of lie detectors or
similar devices in interrogations and examinations
as a condition of continued employment.  See e.g.,
Labor Code §432.2;

p)   Engaging in Human Trafficking in violation of state
and federal law as alleged in more detail below;

q)   Refusing to give employees copies of signed
instruments in violation of Labor Code §432;

r)   Violation of Plaintiff's inalienable rights
guaranteed by Article 1, Section 1 of the California
Constitution including Plaintiff's right to privacy
and to make her own free choice on having children.
See e.g. Hill v. National Collegiate Athletic Assn.
(1994) 7 Cal.4th 1, 15-16 and American Academy of

33

PLAINTIFF'S FIRST AMENDED COMPLAINT

88

1           <u>Pediatrics v. Lungren</u> (1997) 16 Cal.4th 307, 332-

2           334;

3     s)   Intimidating and attempting to silence potential

4           witnesses as an obstruction of justice and unfair

5           business practice.

6     62)   Defendant CSI intentionally, consciously and wrongfully

7 made a tactical decision to ignore the labor laws, deceive

8 employees about their rights, take chances with a compliant and

9 intimidated work force, and hope that the running of statutes of

10 limitations would in the long run save Defendant CSI and the

11 Scientology enterprise millions of dollars.  For this and other

12 reasons, Defendant should be estopped from asserting any statute

13 of limitation defense to Plaintiff's claims for proper

14 compensation for services rendered and any statute of limitation

15 should be found inapplicable as a defense by reason of

16 Defendant's deceit and concealment concerning Plaintiff's rights.

17     63)   Plaintiff has suffered injury in fact and has standing

18 to sue under B&P Code §17203 by reason of the illegal and unfair

19 business practices alleged herein.  Among other things, upon

20 termination of her employment in 2004, Plaintiff was entitled to

21 timely payment of all compensation earned but not paid during her

22 employment at CSI.  At the time of termination, Defendant owed

23 Plaintiff at least four years of back pay under B&P §17200 and

24 the Labor Code, and potentially more pursuant to alternative

25 legal theories under consideration, all of which comes to an

26 amount well in excess of $100,000 and which will be sought in

27 accordance with proof at trial.  Substantial back pay was due

28 under the Labor Code.  Further, Defendant's continued violation

PLAINTIFF'S FIRST AMENDED COMPLAINT

1  of the Labor Code satisfies the requirements of the "continuing

2  violations doctrine".  Under said doctrine all unpaid wages over

3  the many years of Defendant's "continuing violations" of the

4  Labor Code are recoverable herein.  See e.g. Watson v. Department

5  of Rehabilitation, 212 Cal. App. 3d 1271, 1290.  Full back pay

6  for all years of work is also recoverable as human trafficking

7  damages.  Plaintiff also seeks and is entitled to restitution of

8  amounts paid to CSI after her termination on the false

9  "Freeloader Debt" claim.

10     64)  Plaintiff brings this action for the public good and is

11 therefore entitled to recover reasonable attorney's fees and

12 costs.  (C.C.P. 1021.5)

13            **THIRD CAUSE OF ACTION FOR DISCRIMINATION**

14                  **AND INVASION OF PRIVACY**

15     65)  Plaintiff realleges all paragraphs above in support of

16 her third cause of action including and, in particular, previous

17 allegations concerning estoppel to assert statute of limitation

18 defenses and fraudulent concealment by  reason of the unlawful

19 and unenforceable releases, waivers, penalty clauses and similar

20 instruments that Plaintiff seeks to set aside in her First Cause

21 of Action, and the fraudulent conduct of Defendant CSI, its

22 agents and its co-conspirator RTC as alleged herein.

23     66)  Plaintiff was employed by Defendant CSI from 1991 to

24 2004.  During this time, Plaintiff became pregnant on one

25 occasion.  Plaintiff was coerced to terminate the pregnancy by a

26 forced abortion.  Plaintiff was required to abort her child to

27 remain an employee in good standing with Defendant and to avoid

28 adverse consequences in her future employment.  Further,

                              35

1  Plaintiff was intimidated and coerced into not becoming pregnant

2  again, or having a family, to keep her employment with Defendant

3  CSI.  Plaintiff is aware that coercing employees to have unwanted

4  abortions was a relatively common practice at CSI and in the

5  Scientology enterprise.  Plaintiff has knowledge of other female

6  employees ordered to have abortions.

7        67)  Forcing pregnant employees to have abortions

8  constitutes discrimination against female employees, a violation

9  of state and federal law and a violation of Plaintiff's

10  inalienable constitutional rights, including the rights of

11  privacy.  See e.g. Rojo v. Kliger (1990) 52 Cal.3d. 65, 82, 89-

12  90, Hill v. National Collegiate Athletic Assn., *supra* and

13  American Academy of Pediatrics v. Lungren, *supra*.  Defendant

14  ordered and coerced abortions primarily to get more work out of

15  their female employees and to avoid child care issues.

16        68)  While employed by CSI, Plaintiff was subjected to hours

17  of questioning on a device known as an e-meter.  The e-meter was

18  represented to Plaintiff by Defendant to be an almost infallible

19  lie detector that would reveal any lies or omissions.  Plaintiff

20  was led to believe she could have few secrets or private thoughts

21  that could not be discovered by Defendant and used against her.

22  Plaintiff's rights of privacy were coercively violated by the use

23  of the e-meter interrogation process, (see e.g. Labor Code

24  §432.2) and which constitutes actionable invasion of privacy

25  under California tort law.

26        69)  Plaintiff seeks an injunction against forced abortions

27  and reasonable attorney's fees, costs and damages for forced

28  abortions and invasion of privacy according to proof.  This claim

PLAINTIFF'S FIRST AMENDED COMPLAINT

1 │ is made for the public good and to discourage this outrageous

2 │ conduct from continuing into the future.

3 │ **FOURTH CAUSE OF ACTION FOR FORCED LABOR aka HUMAN TRAFFICKING**

4 │     70)  Plaintiff realleges all paragraphs above in support of

5 │ her fourth cause of action for forced labor/human trafficking

6 │ against Defendant CSI and Does.

7 │     71)  Forced labor has been a crime under Federal Human

8 │ Trafficking statutes since at least 2000.  (18 USC §1589 "Forced

9 │ Labor")  The elements of forced labor under Federal law are

10 │ similar to the California Human Trafficking violations described

11 │ below.  Essentially, obtaining labor by use of, or threat of,

12 │ intimidation, duress, coercion, confinement, fraud or physical

13 │ punishment constitutes actionable forced labor.  18 USC §1589

14 │ "Forced Labor" states:

15 │     "Whoever knowingly provides or obtains the labor or

16 │     services of a person –

17 │        1) by threats of serious harm to, or physical

18 │           restraint against, that person or another

19 │           person;

20 │        2) by means of any scheme, plan, or pattern

21 │           intended to cause the person to believe that,

22 │           if the person did not perform such labor or

23 │           services, that person or another person would

24 │           suffer serious harm or physical restraint; or

25 │        3) by means of the abuse or threatened abuse of

26 │           law or the legal process…"

27 │     72)  In addition to human trafficking laws, coerced or

28 │ forced labor is a form of involuntary servitude that has been

37

PLAINTIFF'S FIRST AMENDED COMPLAINT

92

1  outlawed since the ratification of the Thirteenth Amendment.

2  Freedom from forced labor is a constitutional, statutory and

3  common law right.  See, e.g. 18 USC §1584, Penal Code §181, Civil

4  Code §43, Article 1, Section 1 of the California Constitution,

5  United States v. Mussry (9th Cir. 1984) 726 F.2d 1448 and Moss v.

6  Superior Court (1998) 17 Cal.4[th] 396.

7      73)  Pursuant to 18 USC §§1593 and 1595, Plaintiff has a

8  private cause of action under the Federal Human Trafficking laws,

9  including 18 USC §1589 "Forced Labor", on which Plaintiff may

10 recover the full amount of his loss, including payment at minimum

11 wage and for overtime and reasonable attorneys fees.

12     74)  The private cause of action for forced labor under 18

13 USC §§1589, 1593 and 1595 does not have a statute of limitation

14 provision in the Federal Human Trafficking law.  In that

15 circumstance, state procedural law applies and sets the

16 appropriate statute of limitation rule.  See, 3 Witkin Procedure,

17 "Actions" §58.

18     75)  The appropriate and applicable statute of limitation

19 rule of procedure to a forced labor/human trafficking claim,

20 state or federal, is the five year statute of limitation in Civil

21 Code §52.5.  This cause of action for forced labor and human

22 trafficking was timely commenced against both Defendants.

23     76)  In addition to being a violation of statutory and

24 common law rights, and an unfair business practice actionable

25 under B&P §17200 et. seq., Plaintiff may enforce her rights under

26 both Federal and State human trafficking law under Civil Code

27 §52.1(b)(h), which authorizes a civil action for protection of

28 rights and authorizes damages, injunctive relief and attorneys

38

PLAINTIFF'S FIRST AMENDED COMPLAINT

1   fees.   Civil Code §52.1 entitled Civil Actions for protection of

2   rights, damages, injunctive and other equitable relief… states in

3   part:

4       "(b)  Any  individual  whose  exercise  or  enjoyment  of

5       rights  secured  by  the  <u>Constitution  or  laws  of  the</u>

6       <u>United   States,</u>  or  of  rights  secured  by  the

7       <u>Constitution  or  laws  of  this  state,</u>  has  been

8       interfered with, or attempted to be interfered with,

9       as  described  in  subdivision  (a),  may  institute  and

10      prosecute  in  his  or  his  own  name  and  on  his  or  his  own

11      behalf  a  civil  action  for  damages,  including,  but  not

12      limited  to,  damages  under  Section  52,  injunctive

13      relief,  and  other  appropriate  equitable  relief  to

14      protect  the  peaceable  exercise  or  enjoyment  of  the

15      right or rights secured." (Emphasis added)

16      77)  As set forth in Penal Code §236.2, the "indicators" of

17  human trafficking are as follows:

18          a)   Signs of trauma, fatigue, injury, or other evidence

19               of poor care.

20          b)   The person is withdrawn, afraid to talk, or his or

21               his communication is censored by another person.

22          c)   The person does not have freedom of movement.

23          d)   The person lives and works in one place.

24          e)   The person owes a debt to his or his employer.

25          f)   Security measures are used to control who has

26               contact with the person.

27

28

                                39

g)    The person does not have control over his or his own
government-issued identification or over his or his
worker immigration documents.

These indicators are present to various extents in Defendant
CSI's workforce and most if not all would apply to Plaintiff
herein at various times herein material.

78)    Penal Code Section 236.1 states in pertinent part as
follows: "(a) Any person who deprives or violates the personal
liberty of another…, to obtain forced labor or services, is
guilty of human trafficking."

79)    Wrongfully coerced labor was codified as a crime in the
California Penal Code in 2005.  However, forced labor and human
trafficking have been criminal under Federal law since 2000,
involuntary servitude has been a crime for decades and forced
labor would constitute a common law tort under California law.
The California criminal law of human trafficking is cumulative to
pre-existing tort, common law and Federal law prohibitions
against coerced labor and human trafficking.

80)    Subsection (d)(1) of Penal Code Section 236.1 clarifies
that a victim's personal liberty is deprived when there is a
"substantial and sustained restriction of another's liberty
accompli he d through fraud, deceit, coercion, violence, duress,
menace, or threat of unlawful injury to the victim or to another
person[….]"

81)    Subsection (d) of Penal Code Section 236.1 defines
"forced labor or services" as "labor or services that are
performed or provided by a person and are obtained or maintained

40

1  through force, fraud, or coercion, or equivalent conduct that

2  would reasonably overbear the will of the person."

3      82)   California Civil Code Section 52.5 authorizes a civil

4  cause of action for victims of human trafficking.  Civil Code

5  §52.5 applies to this case, although not enacted until 2005.

6  Said Civil Code section is a rule of procedure and remedies, not

7  substantive law.  Statutes of limitations are considered rules of

8  procedure.  Rules of procedure apply as presently stated.  That

9  Plaintiff left Defendants' employ in 2005 does not make the 2005

10  rules of procedure applicable to this case.  The current rules

11  apply.

12      83)   Defendant CSI, and its agents, including other

13  Scientology organizations, deprived Plaintiff of her personal

14  liberty by substantially restricting her freedoms and by their

15  systematic practice of threatening, coercive tactics, which were

16  and are intended to restrict workers such as Plaintiff from

17  freedom of movement, thought and choice, and from obtaining

18  access to the outside world, deprive them of meaningful

19  competitive options, and subjugate the workers' will to that of

20  defendants.  Defendant thus deceitfully, fraudulently and

21  coercively secure, at the expense of Plaintiff's liberty, forced

22  labor at illegal wages.

23      84)   Defendant CSI threatened to, and did on numerous

24  occasions, subjected employees who disobeyed or questioned CSI's

25  absolute authority to severe, sometimes corporal, punishment.

26  Workers who were caught trying to escape have been physically

27  assaulted, restrained and punished.  Defendant CSI threatens and

28  uses a punishment which involves relegating workers to a program

41

1  known as the Rehabilitation Project Force (or "RPF"). Workers

2  assigned to the RPF are subjected to a brutal regimen of manual

3  labor, have no freedom of movement, are constantly under guard

4  and being watched, and are subjected to almost total deprivation

5  of personal liberties.  Working conditions on the RPF are

6  incredibly harsh.  The RPF serves as a deterrent and intimidates

7  workers, such as Plaintiff, into a state of compliance vis-à-vis

8  Defendant.  Employees such as Plaintiff rightfully fear being

9  sent to the RPF and this coerces employees into providing

10  continued forced labor for Defendant CSI.

11            **FIFTH CAUSE OF ACTION FOR INTENTIONAL**

12            **INFLICTION OF EMOTIONAL DISTRESS**

13       85)  Plaintiff realleges all paragraphs above in support of

14  her fifth cause of action for intentional infliction of emotional

15  distress.

16       86)  Defendant CSI, as part of the Scientology enterprise,

17  uses infliction of emotional distress as a tool to subjugate its

18  workers such as Plaintiff.  Defendant CSI intentionally inflicted

19  emotional distress on Plaintiff to control, coerce, manipulate,

20  punish and deceive her.  In particular, Defendant's use of the

21  RPF and "sec checking" procedures on a primitive lie detector

22  were calculated to inflict substantial emotional distress upon

23  Plaintiff.

24       87)  Security checking is a process whereby an employee,

25  such as Plaintiff, is interrogated on a primitive lie detector

26  known as an e-meter.  This process is designed and employed to

27  make sure that the worker has no thoughts of trying to escape or

28  becoming a Scientology risk.  Employees such as Plaintiff are

                                42

1  told, and come to believe, that they can have no secrets from

2  management.  Any such secrets or bad thoughts will be exposed in

3  "sec checks" on the e-meter.  This process started for Plaintiff

4  on or before her first planned visit with her parents and

5  continued for her fifteen years of working for Defendant CSI.

6  The sec checking procedure constitutes a gross invasion of

7  privacy and is used to gather embarrassing data on employees.

8  The threat of using confidential and embarrassing information

9  collected and recorded in the "sec check" process is used to

10  control employees such as Plaintiff.  This practice borders on

11  blackmail and violates both State and Federal law.

12      88)  In the RPF, Plaintiff was forced to do manual labor and

13  live under incredibly harsh conditions.  Plaintiff's pay was

14  docked while working in the RPF for Defendant CSI and she was

15  closely guarded at all times.  Plaintiff was confined to

16  particular areas and her personal liberties and rights were

17  violated on a continual basis.  Further, Plaintiff only recently

18  learned that CSI may have legal responsibility for its wrongful

19  conduct and that this legal responsibility would not be destroyed

20  or lost by reason of documents Plaintiff was coerced into signing

21  under duress when she was "offloaded" as a security risk for

22  swallowing bleach and exhibiting suicidal thoughts or tendencies.

23      89)  At times herein material, Defendant CSI intentionally

24  inflicted serious emotional distress upon Plaintiff all to her

25  damage, which will be sought in accordance with proof at trial.

26  Irrespective of whatever it claims to be, profit or non-profit,

27  CSI is not immune to suits for tortious conduct such as

28  infliction of emotional distress.  See e.g. Wollersheim v. Church

PLAINTIFF'S FIRST AMENDED COMPLAINT

1  of Scientology (1989) 212 Cal.App.3d 872, 880, Molko v. Holy

2  Spirit Assn. (1988) 46 Cal.3d 1092 and Richelle L. v. Roman

3  Catholic Archbishop (2003) 106 Cal.App.4th 257, 276-9.

4      90)  Defendant CSI, its agents and controlling persons acted

5  with malice and in accordance with the stated and unstated, but

6  true, policies of CSI and the Scientology enterprise in

7  inflicting emotional distress upon Plaintiff.

8      **SIXTH CAUSE OF ACTION FOR OBSTRUCTION OF JUSTICE**

9      91)  Plaintiff realleges all paragraphs above in support of

10  her fifth cause of action for obstruction of justice/witness

11  tampering and retaliation in violation of the California Labor

12  Code.

13      92)  Plaintiff and others similarly situated have a legal

14  right to pursue valid claims against the Scientology enterprise,

15  including Defendant CSI, petition the courts for labor abuses and

16  human trafficking without retaliation and use legal process to

17  gather and compel the production and introduction of evidence in

18  support of her case.  Defendant CSI and the Scientology

19  enterprise are wrongfully trying to buy-off, intimidate and

20  coerce potential witnesses favorable to Plaintiff's case.  This

21  course of conduct is illegal under the California Penal Code (See

22  Sections 136.1, 189 & 139) and unlawful under common law and B&P

23  §17200 as an unfair and unlawful business practice.  Plaintiff's

24  remedies include restitution and injunctive relief barring such

25  witness tampering as a wrongful business practices under B&P

26  §17200 et. seq.

27      93)  The Scientology enterprise, including the "Mother

28  Church" CSI, has engaged in conduct designed to intimidate

44

PLAINTIFF'S FIRST AMENDED COMPLAINT

99

1 potential witnesses and former employees with similar experiences

2 and claims. Defendant has engaged in a wrongful course of

3 conduct to interfere with cases brought against any Scientology

4 organization including Defendant CSI and retaliate against

5 persons with labor claims against CSI and/or persons having

6 admissible evidence adverse to Defendant CSI.

7     94) Plaintiff is informed and believes that potential

8 witnesses and former employees with similar claims have been

9 contracted by Defendant's nefarious Office of Special Affairs

10 ("OSA"). Various threats have been made against relatives of

11 potential witnesses, co-claimants and/or potential class members,

12 should this evolve into a class action. Reportedly, persons have

13 been coerced, intimidated or pressured into signing various

14 documents that purport to be waivers, statements of non-

15 liability, confidentiality agreements and liquidated damage

16 agreements. Some have refused to sign but are wary of getting

17 involved and coming forward with the truth concerning Defendant.

18 The purported agreements being pushed upon potential witnesses

19 and plaintiffs are essentially hush agreements not to testify or

20 come forward with the truth about working conditions in

21 Scientology organizations. Defendant is coercing and deceiving

22 people into giving up their liberty of speech and potential

23 claims against Defendant CSI. See California Constitution

24 Article 1, §2. Defendant and its agents are engaged in a

25 wrongful attempt to cover-up illegal conduct.

26     95) Defendant's gag agreements are intended to silence

27 potential witnesses who know the truth about working conditions

28 at CSI. Plaintiff seeks to challenge this wrongful, illegal

45

PLAINTIFF'S FIRST AMENDED COMPLAINT

1   conduct and free all witnesses to come forward and give their

2   evidence, without fear of retaliation from the Scientology

3   enterprise.

4       96)   Plaintiff is informed and believes, and according to a

5   post on the Internet by one of Scientology's former top leaders,

6   that the leader of the Scientology enterprise is offering hush

7   money in the form of "forgiving" Freeloader Debts to people who

8   sign agreements not to join in or give any assistance to labor

9   cases being brought against CSI and RTC.  This case falls into

10  that category of labor cases adverse to CSI.

11      97)   In addition to past gag agreements executed under

12  duress by departing employees, Defendant CSI and its Scientology

13  operatives have gone on a "mission" to silence and buy off

14  witnesses and potential plaintiffs in the pending labor cases

15  currently filed in Los Angeles Superior Court.

16      98)   In addition to buying silence with the purported debt

17  forgiveness, Defendant CSI has used threats of punishing friends

18  and family as the currency with which to buy off potential

19  witnesses and claimants.

20      99)   Defendant's efforts to silence witnesses by threats,

21  coercion, forgiveness of alleged "Freeloader Debt"  and threats

22  of breaking up families, constitutes obstruction of justice,

23  witness tampering and illegal retaliation for making claims under

24  the California Labor Code.  This conduct also constitutes an

25  unfair business practice under B&P §17200.

26      100) The wrongful intimidation into silence of even one

27  potential witness or former employee with valid claims for proper

28  pay is a loss that should not be tolerated by this court.

                                46

/0/

1  Plaintiff and others seeking justice against Scientology will be
2  damaged by Defendant's wrongful conduct and will incur additional
3  costs and attorney's time by reason of wrongful purported
4  confidentiality agreements that Scientology has effectuated, and
5  will continue to pursue, in its mission to defeat labor claims by
6  coercing and intimidating potential plaintiffs and witnesses.

7      **SEVENTH CAUSE OF ACTION FOR FRAUD AND DECEIT AGAINST CSI**

8      101) Plaintiff realleges all paragraphs above in support of
9  her seventh cause of action for fraud and deceit.  This action
10 was timely brought within three years of discovering the alleged
11 fraud.

12     102) Plaintiff is informed and believes, and thereupon
13 alleges, that Defendant CSI and other Scientology organizations,
14 including RTC, have engaged in a long-running fraud against their
15 workforce, including Plaintiff herein.  Among other things, CSI
16 and the Scientology enterprise have for years used various
17 purported waivers, acknowledgments, penalty clauses,
18 confidentiality agreements, statements of non-liability and
19 employment contracts that purport to disavow the legal benefits
20 and existence of employment.  Defendant uses these and similar
21 documents to mislead, intimidate, coerce and prevent employees
22 from seeking to vindicate and enjoy their true and full rights
23 under law.  This course of conduct is fraudulent and illegal
24 under the California Labor Code, federal law and California tort
25 law.

26     103) Defendant CSI intended that employees, including
27 Plaintiff, would be deceived or kept ignorant of their true legal
28 rights by reason of certain form agreements and the circumstances

47

102

1   under which CSI and RTC obtain employee signatures on such
2   documents.  Frequently, a ceremony of sorts is conducted when
3   workers leave the employ of CSI or other Scientology
4   organizations.  The departing employee is brought into a room and
5   video taped.  The employee is typically made to say on tape that
6   he or she is not under duress, which is usually a compelled
7   misstatement of the true circumstances.  It is said or suggested
8   that the video tape process makes the procedure "legal" and
9   binding on the employee.  Of course, these theatrics are part of
10  a coercive and deceitful process that does not change the facts
11  and does not convert a coerced agreement into a freely consented
12  to agreement.

13       104) Plaintiff does not have copies of what she signed but
14  is informed and believes that she was required to sign forms such
15  as what was produced by Defendant CSI in a case similar to this
16  case.  Plaintiff is further informed and believes, and thereupon
17  alleges, that investigation by other former employees has lead to
18  evidence that Defendant CSI, and it co-conspirator Religious
19  Technology Center, knew that certain purported waivers and
20  employment contracts would not stand up in court and were
21  unlawful and unenforceable, however, management of RTC and
22  Defendant CSI decided to use unenforceable and unlawful
23  documents, and have employees sign said improper and unlawful
24  documents, to scare, intimidate and deceive employees so that the
25  employees would not demand or sue for their rights as employees
26  including the right to receive minimum wage, overtime and time
27  off.  In short, Defendant CSI tries to intimidate and deceive
28

1  employees in the name of litigation prevention and damage

2  control.  For the most part it works.

3      105) Employees such as plaintiff have been intimidated,

4  deceived and coerced by the use and threat of the unlawful and

5  unenforceable instruments forced upon employees by CSI and RTC,

6  which documents were forced upon employees for fraudulent

7  ulterior, improper purposes and with malice.

8      106) Plaintiff has been damaged by Defendant's various ruses

9  to deceive employees, to persuade employees to continue working

10  for less than minimum wage and under illegal working conditions,

11  and to deceive employees into thinking that they have no legal

12  recourse against the Scientology enterprise.

13      107) Defendant CSI and other Scientology persons or entities

14  have entered into a conspiracy to deceive employees and obtain

15  the services of employees for less than legal wages.  High level

16  management executives, including Marty Rathbun of RTC and Mike

17  Rinder of CSI, participated in deceiving and intimidating

18  employees such as Plaintiff herein, which was done in the course

19  and scope of their employment with Scientology enterprise CSI and

20  RTC, and which has been condoned and ratified, if not expressly

21  ordered, by the leader of the Scientology enterprise, David

22  Miscavige.  Mr. Miscavige holds the title COB of RTC (Chairman of

23  the Board of Religious Technology Center).

24      108) Plaintiff has been damaged by Defendant's fraudulent

25  and deceitful conduct with respect to intentional refusal to pay

26  legal wages and fraudulent attempts to cover-up and avoid legal

27  liability by forcing upon employees documents known to be false

28  and misleading but still used to deceive, manipulate and coerce

49

PLAINTIFF'S FIRST AMENDED COMPLAINT

1   employees.  Said conduct was done with malice and Plaintiff will

2   seek leave of court to allege and recover punitive damages

3   against Defendant CSI.

4        WHEREFORE, Plaintiff requests:

5        1)   A jury trial;

6        2)   As against Defendant CSI, and Does if named, rescission

7             and total negation of all unlawful and unenforceable

8             instruments executed by Plaintiff during the course of

9             her employment with Defendant including documents signed

10            upon termination of employment;

11       3)   As against Defendant CSI, and Does if named, restitution

12            according to proof under the First Cause of Action,

13            including payment of all wages and compensation, Social

14            Security benefits and restitution of amounts paid on the

15            bogus "Freeloader Debt";

16       4)   As against Defendant CSI, and Does if named, all damages

17            authorized by law for forced labor/human trafficking as

18            alleged herein, including actual damages, back pay,

19            compensatory damages, injunctive relief and treble

20            actual damages;

21       5)   As against all Defendants, including Does if named, an

22            injunction or restraining order barring intimidation of

23            witnesses, and claimants, and barring the use of

24            compensation in any form to entice former employees into

25            silence or agreements not to testify or comment upon pay

26            and working conditions at CSI;

27

28

                              50

105

1     6)   An award of reasonable attorney's fees computed with an

2           appropriate lodestar in consideration of the difficult

3           and litigious nature of Defendant;

4     7)   As against all Defendants, including Does if named,

5           economic damages caused by Defendant's fraud in

6           accordance with proof;

7     8)   Such other relief as the court may deem just including

8           costs.  Plaintiff will seek leave of court to allege and

9           seek punitive damages.

10  May 12, 2009

11                            _____

12                            BARRY VAN SICKLE

                              Attorney for Plaintiff

13                            LAURA ANN DeCRESCENZO

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S FIRST AMENDED COMPLAINT

**EXHIBIT F**

1  ANTHONY J. ONCIDI, SBN 118135
   aoncidi@proskauer.com
2  HAROLD M. BRODY, SBN 84927
   hbrody@proskauer.com
3  G. SAMUEL CLEAVER, SBN 245717
   gcleaver@proskauer.com
4  PROSKAUER ROSE LLP
   2049 Century Park East, 32nd Floor
5  Los Angeles, CA 90067-3206
   Telephone:    (310) 557-2900
6  Facsimile:    (310) 557-2193

7  KENDRICK L. MOXON, SBN 128240
   kmoxon@earthlink.net
8  MOXON & KOBRIN
   3055 Wilshire Blvd., Ste 900
9  Los Angeles, CA 90010
   Telephone:    (213) 487-4468
10 Facsimile:    (213) 487-5385

11 Attorneys for Defendant,
   Church of Scientology International

12

13                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                      COUNTY OF LOS ANGELES, CENTRAL DISTRICT

15

16 LAURA ANN DeCRESCENZO, aka          )   Case No. BC 411018
   LAURA A. DIECKMAN,                  )
17                                     )
               Plaintiff,              )   **NOTICE TO ADVERSE PARTY;**
18                                     )   **REMOVAL OF CIVIL ACTION**
         v.                            )
19                                     )
   CHURCH OF SCIENTOLOGY               )
20 INTERNATIONAL, a corporate entity,  )
   and DOES 1-20,                      )   Com plaint Filed:   Apr 2, 2009
21                                     )   Trial Date:         N/A
               Defendants.            )
22                                     )
                                       )
23                                     )

24

25      TO PLAINTIFF LAURA ANN DeCRESCENZO, aka LAURA A. DIECKMAN, AND

26 HER ATTORNEY OF RECORD:

27

28

NOTICE TO ADVERSE PARTY; REMOVAL OF CIVIL ACTION

_107_

1    PLEASE TAKE NOTICE that on June 4, 2009, defendant, Church of Scientology

2   International filed a Notice of Removal of the above-entitled action to the United States District

3   Court for the Central District of California.  A true and correct copy of the Notice of Removal

4   filed with the federal court is attached hereto as Exhibit A.

5   DATED: June 3, 2009                    PROSKAUER ROSE LLP
                                           ANTHONY J. ONCIDI
6                                          HAROLD M. BRODY
                                           G. SAMUEL CLEAVER
7
                                           MOXON & KOBRIN
8                                          KENDRICK L. MOXON

9

10                                         Harold M. Brody

11                                         Attorneys for Defendant,
                                           Church of Scientology International
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE TO ADVERSE PARTY; REMOVAL OF CIVIL ACTION

0047/21051-006
Current/14755303v

**EXHIBIT G**

1  ANTHONY J. ONCIDI, SBN 118135
   aoncidi@proskauer.com
2  HAROLD M. BRODY, SBN 84927
   hbrody@proskauer.com
3  G. SAMUEL CLEAVER, SBN 245717
   gcleaver@proskauer.com
4  PROSKAUER ROSE LLP
   2049 Century Park East, 32nd Floor
5  Los Angeles, CA 90067-3206
   Telephone:    (310) 557-2900
6  Facsimile:     (310) 557-2193

7  KENDRICK L. MOXON, SBN 128240
   kmoxon@earthlink.net
8  MOXON & KOBRIN
   3055 Wilshire Blvd., Ste 900
9  Los Angeles, CA 90010
   Telephone:    (213) 487-4468
10 Facsimile:     (213) 487-5385

11 Attorneys for Defendant,
   Church of Scientology International
12

13               SUPERIOR COURT OF THE STATE OF CALIFORNIA
14
                 COUNTY OF LOS ANGELES, CENTRAL DISTRICT
15

16 LAURA ANN DeCRESCENZO, aka        )  Case No. BC 411018
   LAURA A. DIECKMAN,                )
17                                   )
              Plaintiff,             )  **NOTICE TO THE CLERK OF THE**
18                                   )  **SUPERIOR COURT RE REMOVAL OF**
         v.                          )  **CIVIL ACTION**
19                                   )
   CHURCH OF SCIENTOLOGY             )
20 INTERNATIONAL, a corporate entity,)
   and DOES 1-20,                    )
21                                   )  Com plaint Filed:    Apr 2, 2009
              Defendants.            )  Trial Date:          N/A
22                                   )
                                     )
23                                   )
                                     )
24                                   )

25      TO THE CLERK OF THE LOS ANGELES COUNTY SUPERIOR COURT:

26      PLEASE TAKE NOTICE that defendant, Church of Scientology International filed a

27 Notice of Removal of the above-entitled action to the United States District Court for the Central

28 District of California.  A true and correct copy of the Notice of Removal filed with the federal

court is attached hereto as Exhibit A.  Pursuant to 28 U.S.C. Section 1446(d), this court "shall proceed no further unless the case is remanded."

DATED: June 4, 2009

PROSKAUER ROSE LLP
ANTHONY J. ONCIDI
HAROLD M. BRODY
G. SAMUEL CLEAVER

MOXON & KOBRIN
KENDRICK L. MOXON

Harold M. Brody

Attorneys for Defendant
Church of Scientology International

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I declare that:  I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: 2049 Century Park East, Suite 3200, Los Angeles, California 90067.

On June 4, 2009, the foregoing documents described as:

**REMOVAL OF CIVIL ACTION FROM THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES TO THE UNITED STATES DISTRICT COURT**

were served on the interested parties in this action:

☑    by placing ☐ the original ☑ a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

☑    (By Mail) I am "readily familiar" with the Firm's practice of collection and processing correspondence for mailing.  Under that practice, the envelope would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    (By E-mail) By electronic transmission of a copy of the document.

☐    (By Overnight Courier) By causing such envelope to be delivered the next business day to the office of the addressee via Federal Express or other similar overnight delivery service.

☐    (By Personal Service) By personally delivering such envelope to the office of the addressee.

☑    (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 4, 2009 at Los Angeles, California.

_____
Jennifer H. Kwon
Print Name

_____
Signature

## SERVICE LIST

1

2 | Barry Van Sickle, Esq.
3 | Law Offices of Barry Van Sickle
   | 1079 Sunrise Avenue
   | Suite B-315
4 | Roseville, CA  95661

5

6 | Marc Marmaro, Esq.
   | Jeffer, Mangels, Butler & Marmaro LLP
   | 1900 Avenue of the Stars, 7th Floor
7 | Los Angeles, CA  90067

8 | Kendrick L. Moxon
   | Moxon & Kobrin
9 | 3055 Wilshire Boulevard
   | Suite 900
10 | Los Angeles, CA  90010

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1